IN RE JACOBY: GUTHERY ET AL., APPELLANTS, *v.* JACOBY, APPELLEE.

(No. 960—Decided July 26, 1943.)

*Mr. Howard F. Guthery* and *Mr. H. Alfred Donithen,* for appellants.

*Mr. John Wilbur Jacoby, in propria persona.*

PUTNAM, J. Under the provisions of Sections 1707 and 1708, General Code, charges were preferred against appellee, John Wilbur Jacoby, by a committee appointed by the Common Pleas Court of Marion

county. A demurrer was interposed by appellee to the charges for the reason that the facts stated in such charges do not state facts which show grounds for disciplinary action by the court. The demurrer was sustained on the authority of *State, ex rel. Oregon Bar Assn.,* v. *Prendergast,* 84 Ore., 307, 164 P., 1178, for the reason that the charges do not allege that appellee defrauded or intended to defraud anyone by an unlawful use of the mails, and consequently failed to conform to Section 1708, General Code, in "stating distinctly the grounds of complaint" as specified by this section. The appellants, not desiring to plead further, appeal to this court on question of law, *viz.*: That the court erred in sustaining the demurrer and dismissing the charges.

The charges filed in this case read as follows:

"That the said John Wilbur Jacoby has been convicted of a crime under the laws of the United States of America as follows: The said John Wilbur Jacoby was, on or about the 10th day of April, 1942, in the United States District Court for the Southern District of Ohio, Eastern Division, convicted of ten counts of an indictment, charging the use of the United States mails in furtherance of a scheme to defraud, and entering into a conspiracy for that purpose; that no appeal was taken from said conviction; and that said conviction has not been reversed or set aside."

Sections 1707 and 1708, General Code, in their pertinent parts read as follows:

"Sec. 1707. The Supreme Court, Court of Appeals or Court of Common Pleas may suspend or remove an attorney at law [from office] or may give private or public reprimand to him as the nature of the offense may warrant, for *misconduct or unprofessional conduct in office involving moral turpitude, or for conviction of a crime involving moral turpitude.*" (Italics ours.)

"Sec. 1708. Before an attorney is suspended or removed, or publicly or privately reprimanded, written charges must be filed against him, stating distinctly the grounds of complaint, and a copy thereof, certified by the clerk, under the seal of the court, served upon him."

The determination of this appeal involves the answer to three questions:

1. Is the phrase "a crime involving moral turpitude," as used in Section 1707, General Code, confined to such an offense against the law of the state of Ohio or does it include such an offense against the laws of the United States, which is not a violation of Ohio criminal statutes?

2. Do the charges as filed allege the conviction of a crime involving moral turpitude?

3. Do the charges as filed "state distinctly the grounds of complaint" as required by Section 1708, General Code?

With reference to these propositions there has been no precise determination in Ohio. The discussion in other states involving these questions as applied to similar statutes and situations are in conflict.

The decisions in Idaho (*In re Dampier,* 46 Idaho, 195, 267 P., 452) ; Oregon (*State, ex rel. Oregon Bar Assn.,* v. *Prendergast, supra*); New York (*In re Donegan,* 282 N. Y., 285, 26 N. E. [2d], 260; *In re Kauffman,* 245 N. Y., 423, 157 N. E., 730) ; and Colorado (*People, ex rel. Atty. Genl.,* v. *Brayton,* 100 Colo., 92, 65 P. [2d], 1438) tend to support the position taken by appellee.

On the other hand Alabama (*State, ex rel. Sanford,* v. *Riddle,* 213 Ala., 430, 105 So., 259) ; Washington (*In re Comyns,* 132 Wash., 391, 232 P., 269) ; Illinois (*In re Needham,* 364 Ill., 65, 4 N. E. [2d], 19) ; and United States Courts (*United States, ex rel. Meyer,* v. *Day,* 54 F. [2d], 336) tend to support the position of appellants.

Let us consider these questions in order. What is meant by the word "crime" as used in Section 1707, General Code of Ohio? Crime is defined as follows:

"A 'crime' is a wrong which the government notices as injurious to the public, and punishes in what is called a criminal proceeding." *Mossew* v. *United States,* 266 F., 18, 11 A. L. R., 1261.

"The terms 'crime,' 'offense,' and 'criminal offense' are all synonymous, and ordinarily used interchangeably, and include any breach of law established for the protection of the public, as distinguished from an infringement of mere private rights, for which a penalty is imposed or punishment inflicted in any judicial proceeding." *State* v. *West,* 42 Minn., 147, 43 N. W., 845.

This definition is quoted with approval in *Ex parte Brady,* 116 Ohio St., 512, 157 N. E., 69.

We can and do adopt this as the generic meaning of the term crime. Did the Legislature use this word "crime" in its generic sense? As to statutory construction, in the case of *Stanton, Pros. Atty.,* v. *Frankel Bros. Realty Co.,* 117 Ohio St., 345, 158 N. E., 868, Chief Justice Marshall said, at page 349:

"It is a general rule of interpretation of statutes that the intention of the Legislature must be determined from the language employed, and, where the meaning is clear, the courts have no right to insert words not used, or to omit words used, in order to arrive at a supposed legislative intent, or when it is possible to carry the provisions of the statute into effect according to its letter."

In various sections of the General Code of Ohio, when the Legislature used the words "crime," "felony" and "misdemeanor" in a limited sense, it has specifically used words of limitation.

Section 13457-1, General Code, provides in part as follows:

"When a person is convicted of a misdemeanor involving moral turpitude *under the laws of this state,* or an ordinance of a municipal corporation * * * and a previous conviction for any such misdemeanor, in this state or elsewhere, is proved against him, the sentence for the last offense shall not be less than double the penalty imposed for such previous offense." (Italics ours.)

Section 13457-2, General Code, contains similar language.

Section 13458-1, General Code, provides in part as follows:

"A person convicted of a felony *in this state,* unless his conviction is reversed or annulled, shall be incompetent to be an elector or juror, or to hold an office of honor, trust or profit." (Italics ours.)

It is to be noted that Section 1707, General Code, does not specifically limit the word "crime" to an offense against the laws of Ohio, as is done with the words "misdemeanor involving moral turpitude" and "felony" in the above-quoted sections.

Section 13444-2, General Code (formerly Section 13659), provides in part:

"No person shall be disqualified as a witness in a criminal prosecution by reason of * * * his conviction of crime."

In *Harper* v. *State,* 106 Ohio St., 481, 140 N. E., 364, the court held that under Section 13659, General Code, a defendant could be cross-examined as to his conviction of crime under state *and* federal laws. In the case of *State, ex rel. Beckman,* v. *Bowman,* 38 Ohio App., 237, 175 N. E., 891, the court held that the words "or being convicted of a felony" as used in regulations forfeiting a policeman's right to a pension on conviction thereof, do not mean a felony under the Ohio law, but under the law of the jurisdiction where the crime was committed. That case involved a conviction of a po-

liceman under a federal statute. The contention was made that the word "felony" as used in Section 45 of the regulations governing the police relief fund meant a felony as defined by the laws of Ohio. On page 242 the court says:

"The other proposition suggested by counsel would lead to this, that, notwithstanding a member of the police department of the city of Cincinnati might be indicted and convicted of a robbery in another state, and escape and return to duty, it would not bar him under the terms of Section 45. The section says 'who is discharged for any offense other than * * * being convicted of a felony.' Certainly it has reference to the conviction of a felony in any jurisdiction, and the character of the offense must be construed under the laws of the jurisdiction where committed."

That case is in direct conflict with the case of *In re Donegan*, 282 N. Y., 285, 26 N. E. (2d), 260, on which appellee strongly relies upon the point under discussion and goes further than it is necessary to hold to sustain the position of the appellants on this point. The New York statute (Section 88, Judiciary Law) provides for the summary and irrevocable disbarment of an attorney in consequence of his conviction of a *felony*. The court held that the term "felony," as used in the statute providing for the summary and irrevocable disbarment of an attorney in consequence of his conviction of a "felony," includes only those federal felonies which are also felonies under the laws of the state and excludes such federal felonies as are cognizable by statute laws as a misdemeanor or not at all, and hence an attorney, convicted in federal court of conspiracy to use the mails to defraud, which is a felony under United States laws but which would be only a misdemeanor when cognizable under the state laws against conspiracy to commit a crime, is not subject to summary disbarment.

The Ohio statute provides for disciplinary action against an attorney, ranging from private reprimand to disbarment, not automatically, for the commission of a *crime involving moral turpitude.*

The decision in the *Donegan case* turned upon the definition of a felony. The court, after tracing the development of classification of crimes into felonies and misdemeanors, pointed out that the classification merely represented the view which the given jurisdiction takes of the gravity of the offense; that crimes might be felonies in other jurisdictions which did not fall within the New York definition of a felony; and that the respondent was convicted of a crime, which, though a felony under United States statutes, was only a misdemeanor under the New York law. Thus the case rests merely upon the *classification* of crimes. Granting for the sake of argument that the conclusion is sound when applied to the New York law (it is much weakened by Judge Loughran's dissenting opinion), its persuasiveness is lost when applied to the Ohio statute. Disciplinary action under the Ohio statute does not rest upon the classification of crimes into felonies and misdemeanors. The sole tests are: (1) Is it a crime, that is, is it a violation of law; and (2) does that law create and define a crime involving moral turpitude? Acts involving moral turpitude are not confined to felonies but may be misdemeanors or a violation of laws unclassified. Yet the norm or standard as to what constitutes moral turpitude is fixed. It is just as easy for the courts of Ohio to determine whether the violation of a particular federal statute involves moral turpitude as it is to make the same determination as to the laws of Ohio.

Had the Legislature intended to confine the meaning of the word "crime" to an offense against the laws of Ohio it could have done so as it did in the above quoted

section. When this term is used without any qualifications we may assume that the Legislature meant to use it in its generic sense. The Legislature not having supplied words of qualifications, the courts will not do so.

If the objection is raised, and it is, that there are no common-law crimes in Ohio, and there are not, still we must bear in mind the fact that Article VI of the Constitution of the United States provides as follows:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

Under our system of government we have a dual sovereignty, yet within the sphere that the Constitution delegates power and authority to the federal government, its laws and enactments are binding upon all the people of the United States just as much as state laws, within the sphere of state sovereignty, are binding. Both are laws of a sovereign authority and a violation of those laws are crimes within the generic meaning of that term.

Consequently, we hold that the word "crime" as used in Section 1707, General Code of Ohio, is used in its generic sense and includes an offense against the laws of the United States; that the phrase "a crime involving moral turpitude" includes an offense against a law of the United States creating and defining a crime involving moral turpitude.

This brings us to a consideration of the second question, *viz.*: Do the charges as filed allege the conviction of a crime involving moral turpitude?

Moral turpitude is a term which has been much defined by the courts. In some respects this term is like

the term "reasonable doubt." Its definition does not gain in clarity by prolixity of statement. In "Words and Phrases," twelve pages are given to various definitions by different courts and to the statement of what crimes do and do not involve moral turpitude. Probably the simplest definition is that moral turpitude is anything done contrary to. justice, honesty, principle or good morals. It is also defined as an act of baseness, vileness or depravity in the private or social duties which a man owes to his fellow men or to society in general contrary to accepted and customary rules of right and duties between man and man. It is also generally accepted that the norm of conduct by which an act is judged to determine whether it involves moral turpitude is a standard prevailing in the United States and at the present time.

Again, there can be no question that there are various shades and degrees of moral turpitude, varying from the vilest and basest acts of moral degeneracy, punishable by the severest punishment of death, to other acts which involve a very slight degree of moral turpitude and upon which society does not frown with such severity. Murder would come in the former category and perhaps a petit larceny could be used as an example of the latter. Again, acts may involve moral turpitude even though they are not crimes and certain acts may be crimes which do not involve moral turpitude at all. The severity of punishment imposed is not controlling on the issue whether the offense involves moral turpitude. Offenses or crimes in Ohio are classified as being either felonies or misdemeanors. Felonies are those punished by death or imprisonment in the penitentiary. All others are misdemeanors and yet it is generally recognized that misdemeanors may involve moral turpitude. The question as to whether the violation of a particular penal statute involved moral turpitude has principally caused the diversity

of decision. Is it a question of law or of the facts in a particular case? Does a statute creating and defining a crime show in itself whether a violation thereof and a conviction thereunder involves an act of moral turpitude? Can a court take a particular statute creating and defining a crime, superimpose thereon the definition of moral turpitude and say as a matter of law that the violation of the former involves the latter?

A consideration of the cases and reason leads to the conclusion that some crimes are of such a nature by definition that they involve moral turpitude as a matter of law. Other crimes are of such a nature as by definition do not involve moral turpitude as a matter of law. In between these two classes there is another class of crimes where the determination as to whether moral turpitude is involved becomes a question of fact in the particular case.

In federal courts the phrase "conviction of a crime involving moral turpitude" has been much construed.

Title 8, Section 155, U. S. Code, makes conviction of a crime involving moral turpitude within five years after entry of the alien to the United States a ground for deportation. Federal courts generally refuse to look behind the conviction but only to the statute to see if the crime involves moral turpitude. In *United States, ex rel. Robinson*, v. *Day*, 51 F. (2d), 1022, it was held that forgery is a crime involving moral turpitude and neither the immigration officials nor the court may consider circumstances under which the crime was in fact committed; and conversely where the crime by its definition does not involve moral turpitude collateral circumstances cannot be considered to show actual immoral conduct.

Again in *United States, ex rel. Meyer*, v. *Day*, 54 F. (2d), 336, it was said that there is no distinction between the substantive crime of grand larceny and the

attempt to commit it, and the court cannot go behind the judgment of conviction to determine the precise circumstances of the crime for which the alien was sentenced. Under this section petit larceny, perjury, forgery, using mails in schemes to defraud, lewdness and manslaughter in first degree have all been held to be crimes involving moral turpitude. Second degree manslaughter and assault have been held not to involve it.

In *United States, ex rel. Mongiovi,* v. *Karnuth,* 30 F. (2d), 825, it was said that to determine whether a crime for which an alien was convicted involves moral turpitude, reference must be had to the statutes of the sovereignty under which the conviction occurred.

In the case of *In re Minner,* 133 Kan., 789, 3 P. (2d), 473, 79 A. L. R., 35, it was held that the words felony or misdemeanor involving moral turpitude in a statute which provided for the disbarment of an attorney on conviction thereof, included a felony under the laws of the United States and a conviction thereof subjected the attorney to disbarment.

In the case of *In re Rothrock,* 16 Cal. (2d), 449, 106 P. (2d), 907, 131 A. L. R., 226, the court held that an assault with a deadly weapon did not as a matter of law involve moral turpitude. In the course of the discussion the court said:

"Therefore, in convictions presenting doubtful cases on the question of moral turpitude, where the perpetrator of the offense is an attorney, the question whether the act involves moral turpitude properly may be resolved by a consideration of the nature of the offense as it bears upon his moral fitness to continue in the practice of the law. A consideration alone of the nature of the offense, therefore, may disclose that conviction thereof would not result in loss of the respect and confidence of his fellow-men, if his name be continued on the roll of attorneys. If that be the result

of the consideration of the record of conviction alone, the conclusion may well be determinative of the question of moral turpitude, and the offense of which the attorney was convicted will be held not to involve moral turpitude. If, however, the nature of the offense, considered alone or in connection with the record of conviction and the statutes defining the particular offense, does not disclose that the commission thereof would or would not cast discredit upon the attorney's moral fitness to practice law, then an investigation into the circumstances will be permitted.''

From the above it can be seen that this court recognizes the general principle that whether a crime involves moral turpitude or not, it is sometimes a question of law and sometimes a question of fact.

In the case of *State* v. *O'Leary*, 207 Wis., 297, 241 N. W., 621, 81 A. L. R., 1193, the court had under consideration the question as to whether under the Wisconsin law an unreversed conviction of a crime involving moral turpitude was conclusive evidence of guilt in a proceeding for the disbarment of an attorney. The Wisconsin law did not make the conviction of a crime involving moral turpitude a separate and independent ground of disbarment. In the course of the discussion the court said:

''(2). Is the record of conviction conclusive evidence of guilt in a proceeding for the disbarment of an attorney? * * *.

''We have come to the conclusion, however, that question No. 2 must receive a negative answer. The statutes of Wisconsin contain no provisions constituting conviction of felony or misdemeanor involving moral turpitude a separate, distinct, and independent ground for disbarment. Hence the question in every disbarment proceeding is whether the facts show that the defendant does not possess the essential character qualifications to continue in the profession. Assum-

ing disbarment proceedings to have followed a defendant's conviction for a crime involving moral turpitude, the question is, What weight, if any, is to be given to the fact of conviction? What probative force has the conviction in establishing the guilt of the attorney against whom the disbarment proceedings are prosecuted, and his unfitness to continue as a member of the bar?

"It is our conclusion that evidence of a conviction which stands unreversed, and which involves the solemn finding of a jury and the judgment of a court, that defendant has been guilty of acts involving such moral turpitude as to indicate his unworthiness to continue as a member of the bar, is not merely evidence of his guilt and his unfitness to practice law, but that *prima facie* it establishes both facts. * * *

"To hold otherwise would be virtually equivalent to making the conviction of crime involving moral turpitude an independent cause for disbarment. The Legislature has not done this, and the court is of the opinion that such a rule is too stringent."

This language indicates that if Wisconsin had a statute making conviction of a crime involving moral turpitude a separate ground of disbarment, it would have been conclusive.

The Supreme Court of Illinois in the case of *In re Needham,* 364 Ill., 65, 4 N. E. (2d), 19, takes the opposite view in a case involving the precise federal statute in question in this case, *viz.*: Title 18, Section 338, U. S. Code (Criminal Code Section 215). On page 70 the court says:

"The United States statute charged to have been violated by the respondent creates and defines a crime the commission of which involves moral turpitude. * * * Anything done knowingly contrary to justice, honesty or good morals involves moral turpitude. * * * At-

tempting to obtain the money or property of others by fraud or false pretenses, whether through the use of the mails or otherwise, involves moral turpitude * * *.

"This court will not go behind the record of the respondents conviction. It was conclusive evidence of the respondent's guilt."

In Illinois there is no special provision of statute making conviction of a crime involving moral turpitude a ground for disbarment. However, the court says on page 69:

"It is contended that the judgment of the federal court is not binding here, and that the respondent should have been permitted to show his innocence of the crime charged in the indictment in that court. In many states statutes provide for the disbarment of attorneys upon conviction of crimes involving moral turpitude. [Citing various states including Ohio.] In Illinois, *even without a statute on the subject*, a judgment of conviction of an attorney of a crime involving moral turpitude is conclusive evidence of his guilt and is ground for disbarment. *People* v. *Meyerovitz*, 278 Ill., 356 [116 N. E., 189]."

These cases together with the ones hereinbefore cited show the diversity of holdings. However, it is still apparent that the courts do adhere to the classification of crimes set forth on page 155 of this opinion. Further quotation from these cases would serve no useful purpose. The question still remains: Does Title 18, Section 338, U. S. Code, create and define a crime involving moral turpitude in any degree? In studying these cases one point in particular stands out. In most of the cases where the courts hold that the particular crimes do not involve moral turpitude as a matter of law, the statutes in those jurisdictions make the conviction of a crime involving moral turpitude a ground for automatic and permanent disbarment. The severity of this result has made the courts particularly

hesitant to say that a particular crime involves moral turpitude as a matter of law, and thus to foreclose the respondent from showing facts which would indicate the degree of moral turpitude involved. However, under the Ohio statute these objections do not obtain. The conviction of a crime involving moral turpitude in Ohio is ground for disciplinary action, but this disciplinary action does not necessarily involve disbarment. It can be anything from a private reprimand, in cases where the moral turpitude is slight, to permanent disbarment where it is great.

From a consideration of the above principles, cases and reasoning we think the conclusions arrived at in the *Needham case, supra,* are sound. It is difficult to conceive how one could be convicted of conspiring to and using the United States mails in furtherance of a scheme to defraud without doing *any act* involving *some* degree of moral turpitude. We can understand, however, that various acts, each of which would be a violation of this section, would involve different degrees of moral turpitude. These acts and circumstances it would be proper for respondent to show in mitigation to determine what disciplinary action would subserve the ends of justice.

Consequently, we hold that the charges as filed allege the conviction of a crime involving moral turpitude; that the United States Criminal Code, Section 215, Section 338 of Title 18, U. S. Code, creating and defining the crime of using the United States mails in furtherance of a scheme to defraud and entering into a conspiracy for that purpose, prescribes a crime involving moral turpitude in some degree as a matter of law.

The third question propounded, to wit: Do the charges as filed "state distinctly the ground of the complaint" as required by Section 1708 of the General

Code? From the answers already given to questions one and two, it would seem obvious that the answer to this question must be in the affirmative. However, the appellee insists that Section 1708 requires the allegation not only of (1) the conviction of a crime within the meaning of Section 1707, but also (2) the commission of an *act involving moral turpitude*. The answer is, as already given, that No. 1 as a matter of law in this case includes No. 2.

In this connection another consideration stands forth. Section 1707 contains *two* grounds for disciplinary action; (A) misconduct or unprofessional conduct in office involving moral turpitude, and (B) conviction of a crime involving moral turpitude. In analyzing these two grounds, a little reflection will show that A is much broader than B, and would include B if B had not been enacted. It would seem that any crime involving moral turpitude would also be misconduct involving moral turpitude. The Legislature must have had a special reason for including ground B. Now, in a proceeding under ground A, where an attorney is charged with misconduct involving moral turpitude and it was either not a crime under the laws of the sovereign power, or being so and there had been no conviction thereof in a court of justice, it is obvious that under Section 1708 not only must the acts of misconduct be alleged in detail but they must be such as involve moral turpitude. The measure of proof however would not have to be beyond a reasonable doubt but only by clear and convincing evidence. Where there had been no previous conviction this would be necessary to apprise the respondent of the nature of the charges against him and to determine whether they involved moral turpitude.

However, the same reasoning does not apply where an attorney has already been convicted in a court of

record of a crime involving moral turpitude. In such case he has been duly indicted by a grand jury, the indictment containing a detailed recital of the acts done and statute violated. A trial by a jury has been had and a conviction obtained by evidence beyond a reasonable doubt, and that conviction sustained by the highest court or an opportunity for review given. The safeguards surrounding the accused in a criminal trial in state and federal courts are the best the Anglo-Saxon jurisprudence has been able to devise in eight centuries and go far beyond a litigant's rights and safeguards in a proceeding under Sections 1707 and 1708, General Code. The question naturally arises why retry the whole issue again under rules less favorable to the accused than in a criminal trial?

Where the proceeding is under the second ground of Section 1707 and the statute violated involves an act of moral turpitude as a matter of law, an allegation of a conviction of a violation of that statute is a sufficient compliance with the provision of Section 1708 which requires the charge to state "distinctly the grounds of complaint."

Consequently, we hold that the demurrer to the charges in the case was not well taken, and that the same should have been overruled by the court below. The judgment of the Court of Common Pleas is reversed and the cause is remanded with instructions to that court to overrule said demurrer.

*Judgment reversed.*

MONTGOMERY, P. J., and NICHOLS, J., concur.

NICHOLS, J., of the Seventh Appellate District, sitting by designation in the Fifth Appellate District.