Gibson, J., dissenting.
The relator filed a complaint against the respondent containing four charges of misconduct. The Board of Commissioners on Grievances and Discipline found that the evidence did not support the allegations of charge No. 3 and, upon motion of the relator, charge No. 4 was dismissed.
Charge No. 1 alleges that on May 22, 1959, the respondent *454 was found guilty by a jury in the United States District Court, Southern District of Ohio, Western Division, of having willfully imparted and conveyed false information, knowing the same to be false, concerning an alleged attempt being made to place a bomb on a civil aircraft, in violation of Section 34, Title 18, U. S. Code, and thus had been convicted of a crime involving-moral turpitude. Actually, the respondent was convicted of violating Section 35, Title 18, U. S. Code. Although charge No. 1 does not so state, it was treated by all parties as charging the respondent with misconduct in violation of Section 5, Rule XXYII of this court.
The substance of charge No. 2 is that, because of the conviction and sentence of the respondent for the crime specified in charge No. 1, he “has brought discredit upon himself, his profession and the courts; and has violated the recognized and accepted code of rules governing his profession.” At no time has there been a specification as to which canon or canons of the Canons of Professional Ethics were violated by the respondent. In fact, the respondent was advised by the secretary of the board of commissioners that under Rule XXYII respondent could not file preliminary motions (e. g., to make definite and certain) but was restricted to filing an answer.
Regardless of the conclusion one may reach as to whether the crime for which respondent was convicted involved moral turpitude, the injustice and unfairness of separately finding him guilty of charge No. 2, outlined above, on the basis of a conviction of a single crime ought to be apparent. Obviously, this is not a criminal proceeding, and hence the constitutional guarantee against being twice placed in jeopardy for the same offense does not apply, but the basic reason for the constitutional guarantee is equally applicable here. Logic surely dictates that charge No. 2 is a consequence of the misconduct, if any, involved in charge No. 1, it does not set forth a separate act of misconduct. The sentence imposed upon the respondent was a consequence of his conviction and not a separate act for which discipline should be imposed.
Se'ction 6 of Rule XXYII of this court provides that each attorney and counselor at law or judge found guilty of misconduct shall be disciplined. Section 5 of the same rule states that *455 “the commission or conviction of a crime involving moral turpitude ’ ’ is misconduct. The question in this case then is whether the crime for which the respondent was convicted involved moral turpitude.
The difficulty of defining “moral turpitude” was conceded recently by this court in Cincinnati Bar Association v. Massengale (1961), 171 Ohio St., 442, 444, when it was said: “Definitions as to those acts which constitute ‘moral turpitude’ are numerous and sometimes conflicting. See 27 Words and Phrases (Perm. Ed.), 558 under the heading, ‘Moral Turpitude.’ ” In Massengale the court specifically ruled that the crime there in question involved moral turpitude. If the respondent in this case is to be disciplined for misconduct because the court believes a conviction under Section 35, Title 18, U. S. Code, involves moral turpitude, then in my opinion the court should so state.
Although it is difficult to define “moral turpitude”, it surely implies something extremely bad, since turpitude is derived from the Latin word “turpis” meaning vile. In re McBride (1956), 164 Ohio St., 419, 425. The Oxford English Dictionary defines “turpitude” as “base or shameful character; baseness, vileness, depravity, wickedness”. Obviously, not all crimes involve moral turpitude. See In re Jacoby (1943), 74 Ohio App., 147, 155. For the reasons discussed below I would find as a matter of law that the crime for which the respondent was convicted did not involve moral turpitude.
The commission of the act of a bomb hoax relating to airplanes became a crime under Public Law 709, 84th Congress, on July 14, 1956, primarily as a result of the Longmont, Colorado, air disaster, where a person destroyed an airplane in flight to collect insurance on his mother. As originally enacted, Section 35, Title 18, U. S. Code, provided:
“Whoever willfully imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, concerning an attempt or alleged attempt being made or to be made, to do any act which would be a crime prohibited by this Chapter or Chapter 97 or Chapter 111 of this title shall be fined not more than $1000, or imprisoned not more than one year, or both. ’ ’
*456 The crime established by the above-quoted statute, and for which the respondent was convicted, is not a crime mala in se but is a crime mala prohibita. The. crime for which respondent was convicted created no actual danger to person, property or society, it was a hoax the ultimate effect of which was to delay the departure of an airplane.
The federal government apparently found it difficult to obtain convictions under the 1956 act because of the lack of uniformity in the construction of the word “willfully”. Consequently, the Attorney General of the United States requested the 86th Congress to revise the statute to make the government’s position clear. In a letter to Congress on May 1, 1961, forwarding the bill, which was later enacted, the Attorney General said, inter alia:
“* * * In prosecuting such individuals, we have taken the position that the word ‘willfully’, as used in section 35, does not necessarily embrace any evil purpose, but comprehends merely a voluntary and conscious imparting or conveying of false information with which the statute deals. However, the courts have not uniformly adopted our position. Adding to the judicial confusion over the applicability of the statute in prankster cases is the disinclination on the part of jurors to accept our position, resulting in undue acquittals in such cases.
“To clarify the statute, and to render it more effective, I submit to the Congress a bill which would make it a felony for one to convey a false report willfully and maliciously, or with reckless disregard for the safety of human life, and a misdemeanor to do so with knowledge of its false character even though without malice or reckless disregard for human life. Such a statute would clearly show the Congressional intention to make it a criminal offense to give false reports even without an evil or reckless motive * * V’ (Emphasis added.) 2 U. S. Cong. & Adm. News, 1961, 3053.
The 87th Congress amended the statute by Public Law 87-338, effective October 3, 1961, to read, in pertinent part, as follows:
“ (a) Whoever imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false * * * shall be fined not more than $1,000, or imprisoned not more than one year, or both.
*457 “(b) Whoever willfully and maliciously, or with reckless disregard for the safety of human life, imparts or conveys or causes to be imparted or conveyed false information, knowing the information to be false, * * * shall be fined not more than $5,000, or imprisoned not more than 5 years, or both”.
I can not understand, in view of the legislative history of this statute, how it can reasonably be said that the crime stated in the original statute, under which the respondent was convicted, was one characterized by baseness, vileness, depravity, or wickedness so as to justify the conclusion that it involved moral turpitude. In fact, the official position of the United States as set forth in the letter of the Attorney General, quoted above, was that there was no evilness involved in the statutory definition of the crime for which the respondent was convicted.
I do not condone the conduct of this respondent. And, in my opinion, a lawyer caught up in a disciplinary proceeding such as this is entitled to no advantage in procedure not afforded to all other persons formally accused of misconduct, but likewise he should be accorded no less in the way of due process. For example, he should be charged specifically, not generally; he should be afforded an opportunity to file preliminary motions ; and he should not be held guilty of two charges of misconduct on the basis of a conviction of a single crime involving moral turpitude, which, in my opinion, is not the case here.
I would dismiss the complaint against this respondent.