[Civ. No. 28308.   Second Dist., Div. Four.   Nov. 10, 1964.]

FRED OTASH, Plaintiff and Respondent, v. BUREAU OF PRIVATE INVESTIGATORS AND ADJUSTERS, Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, and Warren H. Deering, Deputy Attorney General, for Defendant and Appellant.

Jerome Weber and Bernard Mattison for Plaintiff and Respondent.

JEFFERSON, J.—This is an appeal from a judgment granting a peremptory writ of mandate against appellant Bureau of Private Investigators and Adjusters, Department of Professional and Vocational Standards (hereinafter sometimes referred to as the Bureau). The proceedings in the court below were instituted by respondent Otash who filed a petition for a writ of mandate seeking to set aside a decision of the Bureau revoking his license as a private investigator.

Private investigators in this state are licensed and regulated by the Bureau of Private Investigators and Adjusters pursuant to the provisions of Business and Professions Code sections 7500-7583. Grounds for suspension or revocation of a private investigator's license are set forth in section 7551, subdivisions (a)-($l$). This appeal concerns section 7551, subdivision (d), which provides as follows:

"7551. The director may suspend or revoke a license issued under this chapter if he determines that the licensee . . . has:

"  .   .   .   .   .   .   .   .   .   .   .   .

"(d) Been convicted of a felony or *any crime involving moral turpitude* or illegally using, carrying, or possessing a dangerous weapon." (Italics added.)

On December 11, 1959, respondent Otash was convicted of conspiracy, in violation of Penal Code section 182, subdivisions 1 and 4, to violate Penal Code section 337f, to cheat and defraud by criminal means and to obtain money by false pretenses. His conviction was affirmed on appeal. (*People v. Otash*, 186 Cal.App.2d 132 [8 Cal.Rptr. 878].) Appellant, after filing an accusation and holding a hearing, revoked Otash's private investigator's license by reason of this conviction, which appellant determined to be a conviction of a crime involving moral turpitude within the meaning of section 7551, subdivision (d). This determination was based upon certified copies of the indictment, verdict and judgment of the criminal proceedings.

The court below held that the crime for which Otash was convicted is not a crime which inherently or necessarily involves moral turpitude, and therefore, that the action taken by the Bureau was not supported by the evidence.

Appellant Bureau of Private Investigators and Adjusters, on this appeal, asserts that the crime for which Otash was convicted inherently involves moral turpitude; that the record of conviction is itself sufficient to establish this determination; and that the trial court erred in holding otherwise.

In support of the trial court's determination that the crime of which Otash was convicted was not inherently a crime involving moral turpitude, Otash points to the fact that his conviction was subsequently determined to be a misdemeanor, and to the fact that he was convicted of a conspiracy rather than of a substantive offense. However, the severity of the punishment and the fact that the crime is a misdemeanor rather than a felony are not determinative on the question of whether it is a crime involving moral turpitude. (*In re Jacoby* (1943) 74 Ohio App. 147 [57 N.E.2d 932, 936].) Business and Professions Code section 7551, subdivision (d), provides that disciplinary action may be imposed upon the licensee as a private investigator if such licensee has "Been convicted of a felony *or any crime involving moral turpitude.*" (Italics added.) Further, it is well established in California that if the actual commission of an offense involves moral turpitude, then a conspiracy to commit such an offense involves moral turpitude. (*In re McAllister,* 14 Cal.2d 602, 603 [95 P.2d 932].)

Certain other well-established principles are also here pertinent. Whether a person has been convicted of a crime involving moral turpitude is a question of law and not of fact. (*In re Clark,* 52 Cal.2d 322, 328-329 [340 P.2d 613].) The minimum elements of the crime must involve moral turpitude. (*Lorenz* v. *Board of Medical Examiners,* 46 Cal.2d 684, 686-687 [298 P.2d 537]; *In re Hallinan,* 43 Cal.2d 243, 249 [272 P.2d 768].) And, the conviction of a crime may be a conviction involving moral turpitude even though the crime is *malum prohibitum* rather than *malum in se.* (*In re Clark, supra,* p. 324.)

Moral turpitude, broadly defined, is any conduct which is contrary to justice, honesty and good morals. (*Fall* v. *State Bar,* 25 Cal.2d 149, 160 [153 P.2d 1]; *Matter of Coffey,* 123 Cal. 522, 524 [56 P. 448].)

Moral turpitude includes fraud and a crime in which an intent to defraud is an essential element is a crime involving moral turpitude. (*In re Hallinan, supra,* 43 Cal.2d 243, 247; *Mercer* v. *Lence* (10th Cir. 1938) 96 F.2d 122, 124; *State* ex rel. *State Bar Assn.* v. *Stanosheck* (1958) 167 Neb.

192 [92 N.W.2d 194, 197] ; *Chanan Din Khan* v. *Barber* (D.C. N.D. Cal. 1957) 147 F.Supp. 771, 774-775.) The universal application of this rule was stated by the United States Supreme Court in *Jordan* v. *De George* (1951) 341 U.S. 223 [71 S.Ct. 703, 95 L.Ed. 886]. In determining that a conviction of conspiracy to defraud the government of liquor taxes was a crime involving moral turpitude, the court stated (pp. 227-229) :

"Without exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude.

". . . . . . . . . . . .

"In view of these decisions, it can be concluded that fraud has consistently been regarded as such a contaminating component in any crime that American courts have, without exception, included such crimes within the scope of moral turpitude."

And at page 232, the court stated, "The phrase 'crime involving moral turpitude' has without exception been construed to embrace *fraudulent* conduct." (Italics added.)

■ Under either of two distinct theories it must be concluded that Otash, as a matter of law, has been convicted of a crime involving moral turpitude. *One,* Otash, has been convicted of conspiracy to cheat and defraud and to obtain money by false pretenses, a violation of Penal Code section 182, subdivision 4. ■ *Two,* Otash has been convicted (under the same count of the indictment) of conspiracy to commit a crime, namely, the crime denounced by Penal Code section 337f, which conspiracy violates Penal Code section 182, subdivision 1.

Penal Code section 182, subdivision 4, denounces conspiracies to cheat and defraud any person of his property by any means which are in themselves criminal or to obtain money or property by false pretenses, a crime defined in sections 484 and 532 of the Penal Code. (*People* v. *Ashley,* 42 Cal.2d 246, 265-267 [267 P.2d 271].) To support a conviction of the substantive crime of obtaining property by false pretenses, it must be shown that the defendant made a false representation *with intent to defraud an owner of his property,* and that the owner was in fact defrauded. (*People* v. *Ashley, supra,* at p. 259; 47 Cal.Jur.2d, Theft, § 55, pp. 407-408.) In order to sustain a conviction of conspiracy to defraud and obtain money by false pretenses, it is necessary to establish that the defendants *intended* to commit fraudulent acts. (See

*People* v. *Frankfort,* 114 Cal.App.2d 680, 688 [251 P.2d 401].) Indeed, the gist of a criminal conspiracy is a corrupt agreement of two or more persons to commit an offense prohibited by statute, accompanied by some overt act in furtherance of the objects of the agreement. (*People* v. *Frankfort, supra,* at p. 688.) And, proof of a specific intent to violate the law is required to establish the crime of conspiracy. (*People* v. *Bowman,* 156 Cal.App.2d 784, 797 [320 P.2d 70].) Otash's conviction of conspiracy to cheat and defraud by criminal means and to obtain money by false pretenses, therefore, rests upon proof that he conspired with others with the specific and unlawful intent to commit such fraudulent acts; that such conspiracy to defraud invariably is considered as a crime involving moral turpitude is clearly stated in *Jordan* v. *De George, supra,* 341 U.S. 223.

Otash was also convicted (under the same count) of conspiracy in violation of Penal Code section 182, subdivision 1, which statute denounces a conspiracy of two or more persons "to commit any crime." Under this particular provision of section 182, the conspiracy with which Otash was charged and of which he was convicted, was a conspiracy to violate Penal Code section 337f. The latter statute makes it a felony to drug a horse, or use a mechanical or electrical device on a horse, or to enter a horse under a fictitious name or designation, with the intent and purpose of changing the result of a horse race or increasing or retarding the speed of a horse. The minimum elements necessary to sustain a conviction under any of the subdivisions of section 337f require a showing that the accused knowingly committed the act with the intent of altering the performance of a horse or misleading persons as to the true identity of a horse. Such intentional conduct clearly partakes of a fraudulent nature since unsuspecting members of the public wagering on or against the horse would be relying upon its normal ability or upon its supposed identity.

Respondent Otash contends that the evidence presented was insufficient to support the disciplinary action taken under section 7551, subdivision (d). He points to the fact that the only evidence introduced to sustain the action taken by the Bureau in revoking his license were the certified copies of the indictment, verdict and judgment in the proceedings in *People* v. *Otash, supra,* 186 Cal.App.2d 132. He argues that such evidence was insufficient and that factual evidence concerning the circumstances surrounding the offense

was necessary. It is further argued that the Bureau committed an abuse of discretion in revoking respondent's license because its decision is supported only by hearsay evidence. Such contentions are without merit. Business and Professions Code section 7551.5 expressly provides that "The record of conviction or a certified copy thereof, shall be conclusive evidence of such conviction as that term is used in this article or section 7528 of this chapter." The statute thus makes the conviction itself the operative fact upon which disciplinary action may be imposed. Under such circumstances, a certified copy of the conviction is sufficient to sustain disciplinary action and no further showing of a lack of fitness of a licensee is required. (*Furnish* v. *Board of Medical Examiners,* 149 Cal.App.2d 326, 330 [308 P.2d 924, 309 P.2d 493].) In such cases, the facts have already been determined in the criminal proceedings. (*Ratliff* v. *Lampton,* 32 Cal.2d 226, 227 [195 P.2d 792, 10 A.L.R.2d 826].)

Respondent Otash contends that the Bureau of Private Investigators and Adjusters was required, pursuant to the provisions of Business and Professions Code section 117, to inquire into the circumstances of the crime and that its failure to do so constituted an abuse of discretion.

So far as here pertinent, section 117 provides that, in a proceeding conducted by a board within the Department of Professional and Vocational Standards to revoke or suspend a license upon the ground that the licensee has been convicted of a crime involving moral turpitude, ". . . the board *may* inquire into the circumstances surrounding the commission of the crime in order to fix the degree of discipline or to determine if the conviction is of an offense involving moral turpitude." (Italics added.) Under section 117 a board is not required to make an inquiry into the circumstances of the crime since the word "may" rather than "shall" is used in the statute. "[M]ay" is defined as being permissive. (Bus. & Prof. Code, § 19.)

Finally, Otash contends that the Bureau prejudicially abused its discretion by failing to make a finding upon the evidence of "his good character and reputation for truth, honesty and integrity." There is nothing in the record, however, to show that the hearing officer failed or refused to consider such evidence. In the absence of evidence to the contrary, it must be presumed that the hearing officer properly performed his duty and considered all of the evidence introduced. (*Bailey* v. *Department of Alcoholic Beverage Control,*

201 Cal.App.2d 348, 355-356 [20 Cal.Rptr. 264].) Clearly, such a finding may be implied. (*Vega Aircraft* v. *Industrial Acc. Com.*, 27 Cal.2d 529, 536 [165 P.2d 665].) Furthermore, the disciplinary action against respondent Otash concerned only the issue of whether respondent had been convicted of a crime involving moral turpitude. Evidence of respondent's character would be pertinent only in connection with the degree of penalty to be imposed. The hearing officer made the determination that cause for disciplinary action existed under section 7551, subdivision (d), and "for this cause alone respondent's license ought to be revoked." Such determination is sufficient to dispose of any issue of respondent's "character" as it relates to the penalty to be imposed since there is no requirement that there be detailed findings as to penalty. (Gov. Code, § 11518.)

The judgment granting a writ of mandate is reversed, and the matter is remanded with directions to deny the petition for the writ.

Burke, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied November 30, 1964, and respondent's petition for a hearing by the Supreme Court was denied January 6, 1965. Mosk, J., and Burke, J., did not participate therein.