[Civ. No. 43931. First Dist., Div. One. Jan. 31, 1979.]

BAXTER RICE, as Director, etc., Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent;
ALFREDO MARTINEZ, Real Party in Interest.

[Civ. No. 43932. First Dist., Div. One. Jan. 31, 1979.]

BAXTER RICE, as Director, etc., Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent;
ALFREDO MARTINEZ et al., Real Parties in Interest.

COUNSEL

Evelle J. Younger, Attorney General, and Matthew P. Boyle, Deputy Attorney General, for Petitioner.

W. D. Figg-Hoblyn for Respondent.

James J. Reilly for Real Parties in Interest.

OPINION

**RACANELLI, P. J.**—We granted a writ of review in these consolidated cases to determine whether respondent Alcoholic Beverage Controls Appeals Board (hereafter Board) exceeded its jurisdiction in reversing the decision of the Department of Alcoholic Beverage Control (hereafter Department) revoking real parties' on-sale general licenses on grounds including the commission of crimes involving moral turpitude per se. We agree with the Department's findings and determinations that the crimes of possession of cocaine and marijuana for sale involve moral turpitude as a matter of law. We further conclude that no clear abuse of discretion is demonstrated in imposing a penalty of revocation under such circumstances. Accordingly, we annul those portions of the orders of the Board reversing the Department's decisions and direct reinstatement as hereinafter provided.

The procedural history and evidence disclosed in the administrative record is undisputed and recounted as follows:

### The Accusations

On March 19, 1976, the Department filed two separate accusations against real parties in interest seeking suspension or revocation of the on-sale general liquor licenses pursuant to article XX, section 22, of the California Constitution and section 24200, subdivision (a), of the Business and Professions Code.[1]

*The Millbrae Premises*: The Millbrae accusation charged Alfredo Martinez, colicensee of Eyra Martinez for the licensed premises known as "Frank's Restaurant," with the unlawful negotiation and sale of cocaine and possession of restricted dangerous drugs and narcotics paraphernalia;

---

[1]Article XX, section 22, provides in pertinent part: "The department shall have the power, in its discretion, to deny, suspend or revoke any specific alcoholic beverage license if it shall determine for good cause that the granting or continuance of such license would be contrary to public welfare or morals, or that a person seeking or holding a license has violated any law prohibiting conduct involving moral turpitude. . . ."

Section 24200 provides in pertinent part: "The following are the grounds which constitute a basis for the suspension or revocation of licenses: (a) When the continuance of a license would be contrary to public welfare or morals; but proceedings under this section upon this ground are not a limitation upon the department's authority to proceed under Article XX, Section 22, of the Constitution. . . .

" . . . . . . . . . . . . . . . .

"(d) The plea, verdict, or judgment of guilty to any public offense involving moral turpitude . . . ."

the accusation was later amended to add two additional counts charging Alfredo with convictions of violations of the Health and Safety Code, alleging his pleas of guilty in the San Mateo Superior Court to section 11351 (possession of a controlled substance for sale) and in the San Francisco Superior Court of a similar charge plus section 11359 (possession of marijuana for sale), crimes involving moral turpitude.

*The San Francisco Premises*: The San Francisco accusation charged Alfredo, sole licensee for the business premises known as "El Amigo David," with possession of a quantity of amphetamine tablets; the accusation was likewise amended to add similar counts based upon the San Mateo and San Francisco convictions.

### The Administrative Decisions

During the administrative hearings conducted on May 31, 1977, testimony was presented that pursuant to a warrant search of the Millbrae premises, approximately two ounces of cocaine having a street value of over $2,500, and paraphernalia consistent with the use and processing of cocaine were found in the business office located in the rear of the licensed premises; a body search incident to Alfredo's arrest disclosed several bindles containing cocaine. Additionally, uncontroverted documentary evidence was received establishing Alfredo's guilt of the crimes charged in each accusation. Neither Alfredo nor colicensee, Eyra, presented any evidence in defense or mitigation.

On June 14, 1977, the administrative law judge rendered proposed decisions ordering license revocations in each case.[2] The decisions, as adopted by the Department, included findings that Alfredo (1) possessed cocaine, marijuana and narcotics paraphernalia on the Millbrae premises, and (2) had pled guilty to the charged crimes involving moral turpitude. The decisions concluded that the findings of possession and multiple convictions of felonious possession for sale constituted cause for revocation pursuant to the constitutional and statutory provisions; the remaining charges in each case were dismissed.

### The Administrative Appeal

On administrative appeal, the Board concluded that (1) neither possession, nor possession for sale, of marijuana or cocaine constituted

---

[2]The decisions granted the Department's pending motions to amend adding the count charging the San Francisco convictions in each case.

acts involving moral turpitude per se, but (2) such possession on the licensed (Millbrae) premises constituted acts contrary to the public welfare and morals justifying discipline. The Board further concluded that in view of the absence of evidence that the San Francisco offenses were committed on the licensed premises, a finding that such convictions were contrary to public welfare and morals was unsupported. Finally, that since the statutory misconduct was Alfredo's first offense, the penalty of revocation on that sole basis in each case was excessive. Following the Board's reversal and remand for reconsideration of penalty, the Department instituted the instant petition for review.

### Issue Presented

The decisive question presented is whether a violation of the crimes of possession of cocaine and marijuana for purposes of sale constitutes an offense involving moral turpitude per se within the meaning of the relevant constitutional and statutory provisions.

### Scope of Review

Our scope of review of a final decision of the Department is limited to a determination whether substantial evidence exists to support its underlying findings. (*Boreta Enterprises, Inc.* v. *Department of Alcoholic Beverage Control* (1970) 2 Cal.3d 85, 94 [84 Cal.Rptr. 113, 465 P.2d 1], and cases there cited.) Where there is no conflict in the evidence supporting the finding, then the conclusions or determinations reached present questions of law subject to review for correctness, jurisdictional excess or any resulting abuse of discretion. (*Id.,* at p. 95; see also *Covert* v. *State Board of Equalization* (1946) 29 Cal.2d 125, 132, 133 [173 P.2d 545].)

Herein, the evidence of Alfredo's guilt of the charged offenses is undisputed;[3] whether such offenses involve moral turpitude within the meaning of the applicable constitutional and statutory provisions thus becomes a question of law. (See *In re Higbie* (1972) 6 Cal.3d 562, 569 [99 Cal.Rptr. 865, 493 P.2d 97]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 74, fn. 7 [64 Cal.Rptr. 785, 435 P.2d 553]; *In re McAllister* (1939) 14 Cal.2d 602, 604 [95 P.2d 932].)

---

[3]Since neither real parties nor the Board present any argument concerning the underlying pleas of guilty, we may properly assume they were validly entered and that the orders granting probation have become final and are no longer appealable. (See Pen. Code, § 1237, subd. 1, and rule 31(a), Cal. Rules of Court.)

*Moral Turpitude*

The elusive concept of "moral turpitude" has long been the subject of judicial scrutiny; our courts have grappled with the amorphous term in a variety of factual contexts largely involving disciplinary proceedings. (*In re Rohan* (1978) 21 Cal.3d 195 [145 Cal.Rptr. 855, 578 P.2d 102]; *In re Cohen* (1974) 11 Cal.3d 416 [113 Cal.Rptr. 485, 521 P.2d 477]; *In re Fahey* (1973) 8 Cal.3d 842 [106 Cal.Rptr. 313, 505 P.2d 1369, 63 A.L.R.3d 465]; *In re Higbie, supra,* 6 Cal.3d 562; *In re Hallinan* (1954) 43 Cal.2d 243 [272 P.2d 768]; *In re McAllister, supra,* 14 Cal.2d 602 [attorneys]; *Morrison v. State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375] [school teacher]; *Yakov v. Board of Medical Examiners, supra,* 68 Cal.2d 67 [medical doctor]; *Hallinan v. Committee of Bar Examiners* (1966) 65 Cal.2d 447 [55 Cal.Rptr. 228, 421 P.2d 76] [bar admittee]; see also *Board of Trustees v. Judge* (1975) 50 Cal.App.3d 920 [123 Cal.Rptr. 830] [school teacher]; *Weissbuch v. Board of Medical Examiners* (1974) 41 Cal.App.3d 924 [116 Cal.Rptr. 479] [medical doctor]; *Otash v. Bureau of Private Investigators* (1964) 230 Cal.App.2d 568 [41 Cal.Rptr. 263] [private investigator].)

Notwithstanding its frequency of use as a legislatively imposed standard of conduct for purposes of discipline,[4] the concept by nature defies any attempt at a uniform and precise definition. For nearly 40 years our highest court has defined moral turpitude as "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442]) or " 'everything done contrary to justice, honesty, modesty or good morals.' " (*In re McAllister, supra,* 14 Cal.2d 602, 603; see also *In re Rohan, supra,* 21 Cal.3d 195, 200; *In re Fahey, supra,* 8 Cal.3d 842, 849; *In re Higbie, supra,* 6 Cal.3d 562, 569; *Yakov v. Board of Medical Examiners, supra,* 68 Cal.2d 67, 73; *In re Boyd* (1957) 48 Cal.2d 69, 70 [307 P.2d 625]; Webster's Third New Internat. Dict., p. 2469.) Yet it is innately a relative concept depending upon both contemporary moral values and the degree of its inimical quality (*In re Fahey, supra,* at p. 849) whose purpose as a legislated standard is not punishment but protection of the public. (*In re Rothrock* (1940) 16 Cal.2d 449, 454 [106 P.2d 907, 131 A.L.R. 226]; see also *Hallinan v. Committee of Bar Examiners, supra,* at pp. 471-472; *Copeland*

---

[4]See examples collected in footnote 21, *Morrison v. State Board of Education, supra,* 1 Cal.3d 214, at pages 227-228.

v. *Dept. of Alcoholic Bev. Control* (1966) 241 Cal.App.2d 186, 188 [50 Cal.Rptr. 452].)

▮     While not every public offense may involve conduct constituting moral turpitude without a showing of moral unfitness to pursue a licensed activity (*Hallinan* v. *Committee of Bar Examiners, supra,* 65 Cal.2d 447, 459), conviction of certain types of crimes may establish moral turpitude as a matter of law. (*In re Fahey, supra,* 8 Cal.3d 842, at p. 849.) Thus, moral turpitude is inherent in crimes involving fraudulent intent, intentional dishonesty for purposes of personal gain or other corrupt purpose (see *In re Hallinan, supra,* 43 Cal.2d 243, 247-248; see also *Yakov* v. *State Board of Medical Examiners, supra,* 68 Cal.2d 67, 73) but not in other crimes which neither intrinsically reflect similar inimical factors nor demonstrate a level of ethical transgression so as to render the actor unfit or unsuitable to serve the interests of the public in the licensed activity. (See, e.g., *In re Rohan, supra,* 21 Cal.3d 195; *In re Fahey, supra,* 8 Cal.3d 842 [failure to file income tax returns]; *In re Higbie, supra,* 6 Cal.3d 562 [failure to pay marijuana transfer tax]; *Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214 [homosexual conduct]; *Yakov* v. *Board of Medical Examiners, supra,* 68 Cal.2d 67 [doctor furnishing weight-reducing amphetamines without a prescription]; *Hallinan* v. *Committee of Bar Examiners, supra,* 65 Cal.2d 447 [acts of civil disobedience]; *In re Hallinan, supra,* 43 Cal.2d 243 [tax evasion]; cf. *In re Cohen, supra,* 11 Cal.3d 416 [possession of marijuana for sale *factually* determined to constitute moral turpitude in a bar disciplinary proceeding].)

Herein, Alfredo stands convicted of crimes whose elements include a specific intent to sell the proscribed substance. (See *People* v. *Newman* (1971) 5 Cal.3d 48, 54 [95 Cal.Rptr. 12, 484 P.2d 1356].) Though we are aware of the current dialogue offering divergent views concerning the relative degree of harm associated with the personal use of cocaine and marijuana,[5] we do not subscribe to the implication in the Board's argument that possession of such substances motivated by the sole purpose of engaging in illicit trafficking for profit should be similarly perceived. The societal condemnation of such an inherently evil purpose is unmistakably manifested in the pertinent statutory scheme designed to curb and punish such offenses.[6] (Cf. Bus. & Prof. Code, § 24200.5

---

[5]See *United States* v. *Castro* (N.D. Ill. 1975) 401 F.Supp. 120, and relevant literature collected in *Comings* v. *State Bd. of Education* (1972) 23 Cal.App.3d 94, 101-102, footnote 10 [100 Cal.Rptr. 73, 47 A.L.R.3d 742].

[6]At the time the offenses were committed, a violation of Health and Safety Code section 11351 was subject to imprisonment for a term of not less than five nor more than fifteen years; Health and Safety Code section 11359 provided for imprisonment of not

mandating revocation for knowingly *permitting* sales or sales negotiations of narcotics or dangerous drugs *on* licensed premises.) For whatever may be said concerning the outer limits of conduct constituting moral turpitude per se, it cannot be seriously claimed that a violation of the penal statutes in question does not manifest such a degree of antisocial conduct and corrupt purpose as to fall within the contemporary definition of moral turpitude. Surely, a finding of guilt of such reprehensible conduct is a sufficient basis to disqualify the malefactor from engaging in state-licensed commerce with the general public and cannot be rationally distinguished by the startling suggestion that since no sales were actually demonstrated, or that in one instance (the San Francisco convictions) the nefarious activity occurred off the licensed premises, the condemned act was somehow less material to the issue of moral turpitude.

Unlike the myriad factual situations requiring a rational nexus between the immoral conduct and the licensee's fitness to perform his licensed vocation (see, e.g., *Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, at pp. 225, 229; *Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 696-697 and cases cited at p. 702, fn. 6 [139 Cal.Rptr. 700, 566 P.2d 602]; *In re Fahey, supra,* 8 Cal.3d 842, at pp. 851-852; *In re Higbie, supra,* 6 Cal.3d 562, at p. 573; *Von Durjais* v. *Board of Trustees* (1978) 83 Cal.App.3d 681, 688 [148 Cal.Rptr. 192]; *Board of Trustees* v. *Judge, supra,* 50 Cal.App.3d 920, 923, 929) where—as here—the conduct involved on its face reflects qualities of depravity, vileness and social repugnance as measured under contemporary mores (see *In re Hatch* (1937) 10 Cal.2d 147, 151 [73 P.2d 885]), proof of such conduct alone warrants imposition of discipline as authorized by law.

■ Accordingly, we hold that proof of conviction of the crimes of possessing cocaine or marijuana for purposes of sale constitute moral turpitude as a matter of law within the meaning of article XX, section 22, and Business and Professions Code section 24200 justifying the imposition of administrative sanctions without a further showing of unfitness or unsuitability (see *Otash* v. *Bureau of Private Investigators, supra,* 230 Cal.App.2d 568, 574) or its effect upon the conduct of the licensed business. (*H. D. Wallace & Assoc., Inc.* v. *Dept. of Alcoholic Bev. Control* (1969) 271 Cal.App.2d 589, 593 [76 Cal.Rptr. 749, 36 A.L.R.3d 1362].)

---

less than two nor more than ten years. (See now §§ 11351, 11359 and Pen. Code, § 18, as amended by Stats. 1976, ch. 1139, §§ 66, 73 and 98.)

*Abuse of Discretion*

While conceding the Department's power of revocation in appropriate cases, the Board and real parties argue that in light of the absence of any prior record of discipline by either licensee and the substantial economic loss resulting from outright revocation, the penalty as imposed constituted an abuse of discretion. Real parties further argue, without citation of authority, that under such circumstances, including the absence of any culpability on the part of colicensee, Eyra, the power of revocation should only be exercised subject to conditions permitting transfer of the licenses within a reasonable period of time. The arguments are unconvincing.

■ Under the relevant constitutional and statutory provisions, the Department is expressly empowered to either suspend or revoke an issued license (art. XX, § 22, Bus. & Prof. Code, § 24200); the propriety of the penalty to be imposed rests solely within the discretion of the Department whose determination may not be disturbed in the absence of a showing of palpable abuse. (See *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1965) 62 Cal.2d 589, 594 [43 Cal.Rptr. 633, 400 P.2d 745]; *Mundell* v. *Dept. of Alcoholic Bev. Control* (1962) 211 Cal.App.2d 231, 239 [27 Cal.Rptr. 62].) The fact that unconditional revocation may appear too harsh a penalty does not entitle a reviewing agency or court to substitute its own judgment therein (*MacFarlane* v. *Dept. Alcoholic Bev. Control* (1958) 51 Cal.2d 84, 91 [330 P.2d 769]); nor does the circumstance of forfeiture of the interest of an otherwise innocent colicensee sanction a different and less drastic penalty. (See *Coletti* v. *State Board of Equalization* (1949) 94 Cal.App.2d 61, 64 [209 P.2d 984]; see also Cal. Admin. Code, tit. 4, § 58.) We find no abuse of discretion in the record presented.[7]

The orders of the Board reversing the Department's findings of moral turpitude and penalty are annulled; upon remand, the Board is directed to reinstate the Department's orders of revocation on the grounds of Alfredo's conviction of crimes involving moral turpitude per se.

---

[7]While we agree with the dissent's observation that the Department's discretion to invoke its constitutional and statutory power of revocation is not unlimited (*Harris* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 62 Cal.2d 589, 594), there is no evidence that such discretion was exercised in a manner inconsistent with minimum due process requirements; nor, in arguing the claimed abuse of discretion, do the Board and real parties specifically contend otherwise.

In view of our determination herein, it is unnecessary to reach the remaining questions presented on review.

Orders annulled and the matters remanded for further proceedings consistent with the views expressed herein.

Elkington, J., concurred.

**NEWSOM, J.**—I dissent.

I agree with my colleagues that in the present state of the law the possession of cocaine or marijuana for sale involves moral turpitude per se as that protean phrase is currently construed. Of course this standard is, as the majority forthrightly concedes, a shifting one, and the conduct itself is *malum prohibitum* and not *malum in se.** But in any event, given applicable standards of review, the board had no legal right to substitute its notion of what constitutes "turpitude" for that of the director. I find it easy, however, to sympathize with the board's inclination.

It is instructive to speculate on the practical impact of the revocation in the light of what the majority believes to be the object of the director's edict, namely, not punishment of the malefactor, but protection of the public: Eyra Martinez will lose her interest in a valuable liquor license, because her husband and colicensee Alfredo possessed marijuana and cocaine in amounts sufficient to be sold. And she will lose it without a scrap of proof of her fault, without trial, and without demonstration of any rational nexus between her husband's behavior and the business they operate, because the department, like the sanctimonious judge in *Oliver Twist,* regards Eyra and Alfredo as forming a single entity, a perfect union such as Mr. and Mrs. Bumble's, the one's faults being imputable to the other.

And the only discernible public protection to be gleaned from this, is that henceforth the dining public in Martinez' restaurants will be denied the "privilege" of enjoying traditional beer with their enchiladas.

If in fact the purpose of such Tartarean severity is the public protection, how is that interest advanced by stripping Mrs. Martinez of

---

*Indeed, as Mr. Figg-Hoblyn points out, as early as 1915 the Alabama Supreme Court held the actual sale of cocaine was not inherently immoral, but merely *malum prohibitum,* and consequently did not involve moral turpitude. (*Pippin* v. *State,* 197 Ala. 613 [73 So. 340].)

her property, perhaps of the means of her livelihood? And if the real purpose is punishment of her husband, on what bizarre moral theory does the director direct his sanctions at her?

Above all, what leads me to a conclusion contrary to the majority's is the capricious way in which the director is permitted to and does exercise the discretion vested in him by our state Constitution and statutes. Thus, if pursuant to article XX, section 22, the director, as a kind of master of morals, deems any given conduct sufficiently opprobrious *in his eyes,* he may punish it by instant revocation, raining his wrath on the innocent and guilty alike; whereas, if it please him, he may find the guilty conduct insufficiently turpitudinous and *stay* such execution, permitting the licensee time within which to sell the tainted license.

Here, he has chosen for no reason evident in the record, to withhold his largesse; elsewhere, on the same facts (as public record shows) he has exercised it.

I suggest that the possession of this power is a weapon which will often clash, as here, with due process, because its exercise is so vague and standardless that it leaves the public uncertain as to the precise conduct it prohibits. (Cf. *Giaccio* v. *Pennsylvania* (1966) 382 U.S. 399 [15 L.Ed.2d 447, 85 S.Ct. 1558].) It promotes an invidious uncertainty which " 'injects into the governmental wheel so much free play that in the practical course of its operation it is likely to function erratically—responsive to whim or discrimination unrelated to any specific determination of need by the responsible policy-making organs of society— . . .' " (*In re Berry* (1968) 68 Cal.2d 137, 156, fn. 15 [65 Cal.Rptr. 273, 436 P.2d 273].)

I readily concede that the director has broad powers, but they are not plenary, and in my view they are here exercised in derogation of due process, for an impermissibly punitive purpose. (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67 [64 Cal.Rptr. 785, 435 P.2d 553].)

In light of the views expressed, I would affirm that part of the board's orders remanding for redetermination of penalty.

The petition of the real parties in interest for a hearing by the Supreme Court was denied March 29, 1979. Clark, J., and Newman, J., were of the opinion that the petition should be granted.