[Civ. No. 43786. First Dist., Div. Two. Mar. 21, 1979.]

JOHN L. BRANDT, Plaintiff and Appellant, v.
DAVID H. FOX, as Real Estate Commissioner, etc., Defendant and
Respondent.

**COUNSEL**

Orrick, Herrington, Rowley & Sutcliffe, James R. Madison and Norman C. Hile for Plaintiff and Appellant.

Evelle J. Younger, George Deukmejian, Attorneys General, and Charles X. Delgado, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**ROUSE, J.**—Plaintiff John Brandt appeals from a judgment denying his petition for a peremptory writ of mandate to compel defendant David Fox, Commissioner of the Department of Real Estate (hereafter Commissioner) to set aside his decision denying plaintiff a license to act as a real estate salesman. The principal question raised by this appeal is whether denial of plaintiff's application for such a license can be based solely upon his having suffered a conviction in 1974 for distribution of a controlled substance.

Plaintiff filed an application for a real estate salesman's license on October 29, 1976. On January 27, 1977, the Commissioner instituted proceedings for the purpose of inquiring into plaintiff's qualifications for such a license and, in particular, whether plaintiff should be denied a license due to his having sustained a 1974 conviction for distribution of cocaine.

A hearing was held before George Coan, an administrative law judge, who rendered a proposed decision finding that in October 1974, plaintiff had been convicted of a felony involving moral turpitude. He found that the circumstances leading to such conviction were that, while working as a bartender, plaintiff was asked by a customer if he would introduce him to another individual in the bar. Plaintiff, who was "vaguely aware" that narcotics might be involved, arranged the introduction, which took place at a house which was under observation by federal narcotics officers. Plaintiff was to receive $500 for making the introduction, which resulted in a sale of over 100 grams of a substance containing cocaine. However, plaintiff did not personally carry the contraband nor did he take part in the negotiations for its sale. Plaintiff pleaded guilty to the federal offense of distribution of a controlled substance, received a suspended sentence, and was fined $1,500 and placed on probation for a period of three years.

Judge Coan found that plaintiff had led an exemplary life prior to his arrest; that he was married and had a 15-month-old son; that he was highly regarded by his family, friends, employers and coworkers; and that he had received an honorable discharge from the United States Army, where he served in the Green Berets and spent nine months in Vietnam. Plaintiff was then in full compliance with the terms of his probation.[1] His probation officer had found him extremely cooperative and was satisfied

---

[1] At oral argument, it was stipulated that plaintiff has now satisfactorily completed his probation and is no longer in that status.

that his only involvement with drugs was the single event which had resulted in his arrest. Judge Coan observed in his findings that plaintiff was extremely contrite and remorseful concerning the conduct which had led to his arrest and was making regular monthly payments, in an amount specified by his probation officer, toward the $1,500 fine.

Judge Coan determined that since plaintiff's conviction was for a felony involving moral turpitude, such conviction furnished grounds for denial of a real estate license under section 10177, subdivision (b), of the Business and Professions Code.[2] He further found that plaintiff's conviction was for an offense which was substantially related to the qualifications for real estate licensees, thus justifying denial of plaintiff's application under section 480, subdivision (a). However, Judge Coan also found that plaintiff had established that he was now sufficiently rehabilitated and that it would not be against the public interest to issue him a restricted real estate salesman's license. Accordingly, Judge Coan recommended that plaintiff be issued a restricted real estate salesman's license subject to certain specified conditions; further, that he should be ineligible for the issuance of an unrestricted license for a period of three years.

The Commissioner rejected Judge Coan's proposed decision and, in accordance with section 11517, subdivision (c), of the Government Code, elected to decide the case upon the transcript of the administrative hearing and any written arguments which might be submitted.

On September 15, 1977, the Commissioner rendered a decision which incorporated Judge Coan's factual findings with the exception of those bearing upon plaintiff's generally exemplary life and the fact that he was now sufficiently rehabilitated. The Commissioner determined that plaintiff's conviction of a felony involving moral turpitude justified denial of his application for a real estate salesman's license under sections 10177, subdivision (b), and 480, subdivision (a). The Commissioner further determined that while plaintiff had demonstrated some degree of rehabilitation, the showing was not sufficient to justify the issuance of either a plenary or restricted real estate salesman's license at that time. Plaintiff's application for a license was therefore denied.

Plaintiff commenced this action on October 21, 1977, seeking a writ of mandate to compel the Commissioner to grant him a real estate license.

[2]Unless otherwise specified, all statutory references are to the Business and Professions Code.

In his petition, plaintiff sought a judicial declaration that the Department of Real Estate had followed invalid criteria in denying his application for a license; also, he sought an injunction prohibiting the Commissioner from considering ex parte communications from members of his staff in deciding whether to grant plaintiff a license.

A hearing was held in the trial court and on December 16, 1977, the court filed its order denying plaintiff's petition for a writ of mandate. In rendering its decision, the court determined that the administrative record contained substantial evidence to support the findings and decision of the Commissioner; that said decision was within the sound discretion of the Commissioner and that the discretion of the court could not be substituted for the discretion of the Commissioner.

On December 23, 1977, plaintiff filed a request for findings of fact and conclusions of law. The Commissioner opposed such request, asserting that findings and conclusions were not required.

On December 29, 1977, the court rendered a judgment denying plaintiff a peremptory writ of mandate and determining that he was entitled to take nothing by his petition. An amended judgment, filed on January 6, 1978, specified that plaintiff's causes of action for declaratory and injunctive relief were dismissed. Plaintiff filed a timely notice of appeal from the amended judgment.

Plaintiff's first contention on appeal is that the Commissioner and the trial court both erred in determining that plaintiff's conviction was substantially related to the qualifications, duties or functions of a real estate salesman. He also asserts that the Commissioner and the court erred as a matter of law in determining that plaintiff's showing of rehabilitation was insufficient.

Section 10177, subdivision (b), authorizes the denial, suspension or revocation of a real estate license when an applicant or licensee has been convicted of "a felony or a crime involving moral turpitude . . . ." Section 480, subdivision (a), provides, in pertinent part, that a board may deny a license required by the Business and Professions Code when an applicant has been convicted of a crime.[3] However, the final paragraph of

---

[3]Section 480, subdivision (a)(2), also authorizes the denial of a license when the applicant has done any act involving dishonesty, fraud or deceit with the intent to substantially benefit himself or another, or substantially injure another. However, a reading of the Commissioner's findings fails to indicate that he found this provision

subdivision (a) of section 480 provides that "The board may deny a license pursuant to this subdivision only if the crime or act is substantially related to the qualifications, functions or duties of the business or profession for which application is made."

Section 475 provides, in pertinent part, that "(a) Notwithstanding any other provisions of this code, the provisions of this division shall govern the denial of licenses on the grounds of: . . . (2) Conviction of a crime; . . . (c) A license shall not be denied . . . on the grounds of a lack of good moral character or any similar ground relating to an applicant's character, reputation, personality, or habits."

█ Plaintiff contends that the crime of distribution of a controlled substance does not bear any reasonable relationship to the qualifications, functions or duties of a real estate salesman and that the denial of his application for a license was therefore improper under the above-quoted language of subdivision (a). He also asserts that, since conviction of any crime necessarily reflects upon one's moral character, the denial of his application violated subdivision (c) of section 475.

█ Plaintiff's reliance upon subdivision (c) of section 475 is misplaced. The provision in question precludes denial of a license "on the grounds of a lack of good moral character or any similar ground relating to an applicant's character, reputation, personality, or habits." Since criminal convictions are separately dealt with in subdivision (a)(2) of section 475, it is apparent that subdivision (c) was intended to apply to evidence of bad moral character *other* than criminal convictions. █ Any other construction of subdivision (c) would effectively nullify the provisions of subdivision (a)(2) of section 475 and thereby run afoul of the cardinal rule that a court is prohibited from a construction which will omit a portion of a statute; also, that a court is required to construe a statute so as to effectuate all of its provisions. (*Mercer* v. *Perez* (1968) 68 Cal.2d 104, 112, 117 [65 Cal.Rptr. 315, 436 P.2d 315]; *County of Sacramento* v. *Superior Court* (1971) 20 Cal.App.3d 469, 472 [97 Cal.Rptr. 771].)

The language of subdivision (a) of section 480 is in no sense ambiguous. It clearly prohibits denial of a license based upon a criminal conviction or other wrongful act which is not substantially related to the qualifications, functions or duties of a particular profession. The California courts have long adhered to such a policy.

---

applicable to plaintiff. The Attorney General has likewise placed no reliance on this provision on appeal.

In *Hallinan* v. *Committee of Bar Examiners* (1966) 65 Cal.2d 447 [55 Cal.Rptr. 228, 421 P.2d 76], the petitioner was denied admission to the bar and a license to practice law on the ground that he was not of good moral character. The evidence in support of this finding by the Committee of Bar Examiners established that the petitioner had been arrested and convicted of acts of civil disobedience committed by him in various attempts to further the civil rights of Negroes. It was also established that the petitioner had been an active participant in nine different fist fights over the years. The California Supreme Court held that none of the petitioner's acts involved dishonesty and that none bore a direct relationship to his fitness to practice law. (P. 471.) The court noted that six of the fist fights had occurred six years earlier and could thus be characterized as "youthful indiscretions." (P. 464.) Of the remaining three fights, two involved situations where the petitioner had acted in defense of himself or another, and the third was deemed by the court not to be sufficiently serious to deprive the petitioner of the privilege of practicing law. (Pp. 464-466.) The court affirmatively found the petitioner to be of good moral character and directed that he be admitted to the bar.

In *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375], the petitioner's life diplomas to teach in public secondary schools were revoked after he had participated with a fellow teacher in a noncriminal physical relationship of a homosexual nature. The revocation was based upon provisions of the Education Code authorizing such a sanction for immoral or unprofessional conduct or acts involving moral turpitude. (P. 220.) The California Supreme Court held that the Board of Education could not "abstractly characterize" the petitioner's conduct as immoral, unprofessional or involving moral turpitude in the absence of evidence that such conduct rendered him unfit to teach. (P. 229.) The court held that in making such a determination, the board should consider such matters as "the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers." (P. 229.)

The court noted that the petitioner's license had been revoked three years after the homosexual incident and that three more years had elapsed as of the date of the Supreme Court decision. The court further pointed out that the petitioner's motives at the time of the incident involved neither dishonesty nor viciousness and that there was evidence of extenuating circumstances. (P. 237.) The court concluded that the record did not support the board's decision to revoke the petitioner's diplomas and held that the judgment denying him a writ of mandate should be reversed.

In *Comings* v. *State Bd. of Education* (1972) 23 Cal.App.3d 94 [100 Cal.Rptr. 73, 47 A.L.R.3d 742], the *Morrison* reasoning was applied in a situation where two teachers, Comings and Jones, each had their teaching credentials revoked, in separate proceedings, after they were convicted of possession of marijuana. The appellate court concluded that the revocation of Comings' credentials was unsupported by a sufficient showing of his unfitness to teach and, like the *Morrison* situation, was improperly based upon an abstract characterization of his conduct as immoral, unprofessional and involving moral turpitude, without any evidence of extenuating or aggravating circumstances, likelihood of recurrence, motivation or the other factors enumerated by the *Morrison* court. (Pp. 103-104.) As to the other petitioner, Jones, the court reached a contrary conclusion and held that his credentials were properly revoked based upon testimony that he had been rendered unfit to teach due to the notoriety of his involvement with marijuana and the resulting adverse effect upon the attitude of students and parents in the community. (Pp. 105-106.)

*Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187 [107 Cal.Rptr. 852], involved the dismissal of a tax representative trainee from state employment after he pleaded guilty to possession of marijuana. The State Personnel Board had based its action upon a Government Code section authorizing dismissal for a failure of good behavior which was of such a nature that it caused discredit to the employee's agency or department. (P. 191.) The board had received no evidence other than the fact of the criminal conviction. In accordance with the *Morrison* reasoning, the appellate court concluded that possession of marijuana did not, in itself, establish that the appellant had caused discredit to the agency for which he worked and that proof should have been presented establishing that the appellant's failure of good behavior had caused harm to public service. (Pp. 194-195.) The court suggested that such proof should include extenuating or aggravating circumstances, the likelihood of recurrence,

the proximity or remoteness in time of the conduct, the notoriety caused by such conduct and the likelihood that the conduct would impair the functioning of the agency by which the appellant was employed. (P. 195.) The court concluded that in the absence of any such evidence, the bare fact of the appellant's conviction did not justify his dismissal from state employment and held that the judgment denying him a writ of mandate should be reversed.

Finally, in *Cartwright* v. *Board of Chiropractic Examiners* (1976) 16 Cal.3d 762 [129 Cal.Rptr. 462, 548 P.2d 1134], the California Supreme Court held, in a four-to-three decision, that revocation of the plaintiff's license to practice as a chiropractor could not properly be based upon a misdemeanor conviction of keeping or willfully residing in a house of ill fame resorted to for the purposes of prostitution or lewdness. Although there was evidence at the administrative hearing which strongly suggested that the plaintiff was intentionally lending a false aura of respectability to a house of prostitution by posting his license at said premises and purporting to practice his profession there (see pp. 774-776), the majority of the court held that the question whether a conviction involved moral turpitude could not be determined in the abstract, but depended upon whether the conviction demonstrated unfitness to practice a profession. (P. 767.) Citing *Morrison,* the court also observed that the state's power to regulate a profession could not be used arbitrarily to penalize conduct having no demonstrable bearing upon fitness for its practice. (P. 767.) The court concluded that since the offense of which the plaintiff had been convicted could have been committed without personal or entrepreneurial participation in illicit sexual activities and since such conviction could have been based merely upon personal residence unrelated to chiropractic practice and only peripherally related to prostitution, revocation of the plaintiff's license was unwarranted. (P. 768.)

 When the reasoning of these cases is applied to the factual situation before us, it becomes apparent that the only evidence relied upon by the Commissioner in denying plaintiff a real estate salesman's license consisted of the bare fact of plaintiff's conviction of distribution of a controlled substance. Conspicuous by its absence in the Commissioner's decision is any finding that plaintiff's conviction was substantially related to the qualifications, functions or duties of a real estate salesman or that such conviction had rendered him unfit to engage in that profession. There was no evidence, of the type specified in *Morrison* and its progeny, which would support such a finding.

On the other hand, plaintiff affirmatively sought to establish that, under the *Morrison* criteria, his conviction should *not* be deemed a valid ground for denial of a real estate license. He produced evidence of extenuating circumstances, namely, that he himself had taken no part in the negotiations resulting in the sale of cocaine; had never had the contraband in his possession and had, at most, succumbed to the temptation to earn $500 by arranging an introduction with some knowledge of the fact that it might result in a sale of cocaine. Plaintiff also endeavored to show that there was no real likelihood of a recurrence of such behavior, offering evidence that he had led an exemplary life both before and after the incident which resulted in his conviction; that he was contrite and remorseful concerning this incident and that he had fully cooperated with his probation officer; that his probation officer was convinced that plaintiff was "a very decent person" who possessed honesty and integrity and would not again compromise himself by violating the law in any manner. On the issue of the proximity or remoteness in time of plaintiff's conviction, the evidence established that the event occurred in October 1974, more than four years ago.

In summary, the evidence shows that on one isolated occasion, relatively remote in time, plaintiff was peripherally involved in an illegal drug transaction which, in view of his character, his remorseful attitude and his otherwise exemplary conduct, was unlikely to recur. Under the authorities previously discussed, it appears that, only by indulging in the sort of abstract characterization which has been condemned by the California courts, can the connection between this plaintiff's one instance of misbehavior and his qualifications to act as a real estate salesman be established. The Attorney General's argument that, having once violated the law to make a quick profit, plaintiff might be tempted to engage in overreaching and dishonest conduct as a real estate salesman, is not convincing. While we do not condone the conduct which resulted in plaintiff's conviction, yet it did not involve fraud or dishonesty in any fundamental sense. Given the isolated nature of the incident, the fact that it occurred over four years ago, the lack of any evidence that plaintiff's subsequent conduct has been other than exemplary, or that such conduct bore a substantial relationship to the qualifications, functions or duties of, or otherwise rendered him unfit to engage in, the activity for which he sought a license, we must conclude that the Commissioner's decision to deny plaintiff's application was not supported by substantial evidence.

The Attorney General contends that, even if the evidence was insufficient to establish that plaintiff's application for a license was

properly denied under section 480, subdivision (a), denial was nevertheless authorized by section 10177, subdivision (b). He reasons that since the latter section specifically applies to real estate licenses and section 480, subdivision (a) is more general in its application in that it covers all occupations subject to regulation under the Business and Professions Code, section 10177, subdivision (b) ought to be held to control over section 480, subdivision (a). He argues that since section 10177, subdivision (b), authorizes denial of a license when an applicant has been convicted of "a felony or a crime involving moral turpitude," it was unnecessary to establish that plaintiff's conviction bore a substantial relationship to the qualifications, duties or functions of a real estate salesman; that it was sufficient to show only that plaintiff was convicted of any felony or of any crime involving moral turpitude. In support of his argument, the Attorney General relies upon *Jennings* v. *Karpe* (1974) 36 Cal.App.3d 709 [111 Cal.Rptr. 776]; *Otash* v. *Bureau of Private Investigators* (1964) 230 Cal.App.2d 568 [41 Cal.Rptr. 263]; and *Watkins* v. *Real Estate Commissioner* (1960) 182 Cal.App.2d 397 [6 Cal.Rptr. 191].

We find the Attorney General's position unpersuasive. All three cases upon which he relies were decided prior to the 1974 legislative revisions to division 1.5 (§ 475 et seq.). In *Loder* v. *Municipal Court* (1976) 17 Cal.3d 859, at page 874 [132 Cal.Rptr. 464, 553 P.2d 624], the California Supreme Court pointed out that "Chapter 1321 of the Statutes of 1974 substantially rewrote the provisions of law governing denial, suspension, and revocation of . . . [business or professional] licenses. (Bus. & Prof. Code, div. 1.5.) . . . [A] conviction can no longer support a denial or revocation of a license unless the crime is 'substantially related to the qualifications, functions or duties of the business or profession' in question (Bus. & Prof. Code, §§ 480, subd. (a), & 490.)"

We have no doubt that the Legislature intended that this prohibition prevail over those sections of the Business and Professions Code which prescribe licensing requirements for a particular business or profession. Section 475, subdivision (a), states that "*Notwithstanding any other provisions of this code,* the provisions of this division shall govern the denial of licenses on the grounds of: . . . (2) Conviction of a crime . . . ." (Italics added.) Section 480, subdivision (a), specifies the grounds for denial of a license and states in subdivision (a)(3) that "The board may deny a license pursuant to this subdivision only if the crime . . . is substantially related to the qualifications, functions or duties of the business or profession for which application is made." ■ In view of the italicized language of section 475, subdivision (a), it is evident that the

limitations imposed by section 480, subdivision (a)(3), were intended to control over a statute such as section 10177, subdivision (b), and that it was the aim of the Legislature to insure that licensing for a business or profession could not be barred for arbitrary reasons.[4] It follows that the language of section 10177, subdivision (b) and the pre-1974 cases interpreting that section must give way to the mandate of section 480, subdivision (a)(3). Thus we find no merit to the People's claim that conviction of any felony or crime involving moral turpitude, however unrelated to one's qualifications for a particular occupation, furnishes grounds for denial of a license.

In view of the result which necessarily follows from our determination of this matter, we find it unnecessary to deal with other issues raised by plaintiff in his appeal.

The judgment is reversed and the matter remanded to the trial court with directions to issue a peremptory writ of mandate.

Taylor, P. J., and Kane, J., concurred.

---

[4]Seven years prior to the 1974 legislative revision of the laws governing business or professional licensing, a Presidential Task Force rendered a report recommending a general overhaul of all state and local licensing and employment regulations to eliminate irrational barriers, to require that there be a rational connection between an offense and the particular occupation and to preclude licensing authorities from flatly precluding all offenders on the ground of a lack of good moral character. (The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections (1967) at p. 33.) The report concluded that some licensing authorities "tend to be primarily concerned with advancing the interests of their own members. Thus, when faced with the problem of whether to license persons with criminal records, they may be unduly concerned with the effect on the status of their professions. Further, to the extent they try to consider the public interest, they are likely to have an unrealistic view of the importance of their own profession or occupation and the potential harm to the public that might be done by unfit persons. They tend to give inadequate weight to the interests of the convicted person, and to those of society as a whole in having the contributions of this person and in not forcing him back into a life of crime." (P. 91.)