[No. F013304. Fifth Dist. Oct. 23, 1990.]

JOSE RAMON CLERICI, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

**COUNSEL**

John K. Van de Kamp, Attorney General, Richard K. Frank and Marybelle D. Archibald, Deputy Attorneys General, for Defendant and Appellant.

Rushing, Lyions & Anderson and George E. Anderson for Plaintiff and Respondent.

**OPINION**

**MARTIN, Acting P. J.**—This case involves an application by respondent Jose Ramon Clerici to obtain a vehicle salesperson's license from the Department of Motor Vehicles (DMV). The DMV denied the application because of Clerici's prior conviction for possession of cocaine for sale, which it determined was a crime of moral turpitude substantially related to Clerici's honesty and integrity to act as a salesman. Clerici's administrative appeal was unsuccessful, and he filed a petition for writ of mandamus with the Superior Court of Stanislaus County. The court held there was insufficient evidence to support the DMV's decision and ordered the DMV to issue the license. The DMV now appeals the judgment of the superior court, contending it has the authority to deny a vehicle salesman's license because Clerici's conviction was a crime involving moral turpitude.

FACTS

On October 11, 1986, respondent Jose Ramon Clerici was arrested by Drug Enforcement Administration agents in San Diego after the agents

discovered approximately 1260.8 grams of methamphetamine in his vehicle. Clerici was also under the influence of narcotics. On July 21, 1987, Clerici was again arrested after 17.9 grams of cocaine were seized from his residence. On August 27, 1987, respondent pleaded guilty to one count of possession of cocaine for sale (Health & Saf. Code, § 11351), in exchange for the dismissal of charges relating to the methamphetamine. He was placed on five years' formal probation, ordered to serve two hundred seventy days in the county work release program, and fined.

On May 17, 1988, Clerici filed an application with the DMV for a vehicle salesperson's license, and fully disclosed his prior conviction. A temporary license was issued on June 1, 1988, and Clerici began working at Modesto Toyota. On September 30, 1988, Clerici was notified that his application for a salesperson's license was denied, and the temporary permit was issued in error because of his prior conviction for possession of cocaine for sale. Clerici filed an administrative appeal of the DMV's decision.

On February 23, 1989, a hearing was held before Administrative Law Judge Stephen J. Smith. The DMV contended it was authorized to deny the license because Clerici had been convicted of a crime involving moral turpitude. On the other hand, Clerici testified that he was "more positive" toward life since his conviction. He attended Alcoholics Anonymous and Narcotics Anonymous programs during his time in custody but did not continue the programs after his release. Since the denial of the license, he was selling vacuum cleaners door-to-door. He admitted he was convicted of possession for sale and used narcotics for almost a year prior to his arrest. He also admitted methamphetamine oil was found in his vehicle and that he was in the process of manufacturing narcotics when arrested. Clerici testified he used narcotics because of a "negative lifestyle," and such lifestyle would not recur because he was looking for a better life and job. He did not use drugs, but still had "a couple beers" on occasion.

Derek Beverly, representing the DMV, argued there was a "very clear connection" between Clerici's conviction and his honesty and integrity to enter the automobile sales business. Clerici was still on probation, and Beverly suggested that Clerici reapply for a license after the successful completion of that probationary period. George Anderson, representing Clerici, claimed the DMV lacked jurisdiction to deny a license under the "moral turpitude" standard because of certain amendments to the Vehicle Code.[1] Anderson admitted Clerici "displayed bad judgment," but argued the conviction was unrelated to his honesty and veracity. Anderson also argued that there must be some substantial or rational connection between

---

[1] All statutory references are to the Vehicle Code unless otherwise indicated.

the crime and the particular occupation. While possession for sale might be a crime of moral turpitude, it was not indicative of Clerici's honesty and integrity. The administrative law judge received letters from two managers at Modesto Toyota praising Clerici's work. The matter was taken under submission.

On April 13, 1989, the proposed decision of the administrative law judge was filed, and the license denial was upheld. The DMV was authorized to deny a license based on a conviction of a crime of moral turpitude, but only if there was a substantial or rational connection between the criminal offense and the particular occupation. "Honesty and integrity are the primary traits of good moral character that must reasonably relate to the occupation of vehicle salespersons. *Brewer* v. *Department of Motor Vehicles* (1979) 93 Cal.App.3d 358, 366 [155 Cal.Rptr. 643]."

The administrative law judge made a factual finding that Clerici's prior conviction was a crime of moral turpitude and rationally related to the duties, functions and qualifications of a vehicle salesperson licensee: "The vehicle salesperson is expected to exhibit good moral character and must be trusted to conduct himself with honesty and integrity toward the vehicle-purchasing public. The conviction and its factual circumstances belie good moral character, honesty and integrity. The offense and its surrounding facts demonstrate respondent's significant involvement in narcotics trafficking, as demonstrated by a conviction for possession for sale, possession of very large amounts of narcotics, and an expressed intent to manufacture controlled substances, coupled with less than credible denials that his possession of the narcotics were for personal use. The conviction is quite recent, as is the criminal conduct. As such, the conviction and its surrounding circumstances reflect unfavorably upon respondent's character, honesty and integrity and is therefore rationally related to the duties, functions and qualifications of a vehicle salesperson licensee."

The administrative law judge considered circumstances in mitigation, such as the praise of his superiors at Modesto Toyota and his own desire to be gainfully employed, but concluded the factors in aggravation outweighed his current rehabilitation.

"Respondent's rehabilitation from this serious and quite recent offense is incomplete. Respondent continues on felony probation, and has not yet been able to obtain an early termination of probation or an order pursuant to Penal Code section 1203.4, both prima facie evidence of rehabilitation."

The administrative law judge also noted the offense involved substance abuse and Clerici admitted to an occasional social drink.

"[T]he conviction . . . coupled with the surrounding circumstances clearly reflect unfavorably upon respondent's moral character, honesty and integrity, and thus rationally relate to his qualifications to become a vehicle salesperson licensee, in the absence of evidence of rehabilitation that outweighs the aggravated nature of the conduct. Such does not yet exist in this case."

On May 9, 1989, the DMV denied Clerici's petition for reconsideration, and on May 12, 1989, the DMV adopted the decision of the administrative law judge.

On August 29, 1989, Clerici filed a petition with the Superior Court of Stanislaus County for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5. The petition requested a writ ordering the DMV to grant the salesperson's license. Clerici claimed the DMV lacked the authority to deny the license. In the alternative, he argued the lack of nexus between his prior conviction and the business of auto sales. The matter was submitted to the superior court on the pleadings and transcript of the administrative hearing and the court took the matter under submission. On November 21, 1989, Judge Cantwell issued his decision: "IT IS HEREBY ORDERED that the conclusions of the Administrative Law Judge are not supported by the evidence, and accordingly the Department of Motor Vehicle[s] is hereby Ordered to issue a Vehicle Salesman's License to Petitioner, . . ."

On December 22, 1989, the DMV filed a timely notice of appeal of the superior court's decision. DMV claims the authority to deny a license pursuant to the licensing provisions of the Vehicle Code. It also claims Clerici's prior conviction for possession of cocaine for sale is a crime of moral turpitude substantially related to the profession of automobile sales. Clerici responds that the DMV lacked the authority to deny the license, and his conviction was not a crime of moral turpitude.

DISCUSSION

I. STANDARD OF REVIEW

The DMV contends the superior court's decision should be reviewed under the "substantial evidence" test. Clerici contends the license denial affected a vested right and requires review under the "independent judgment" test.

■ Code of Civil Procedure section 1094.5, subdivision (c) provides the basic framework by which an aggrieved party to an administrative

proceeding may seek judicial review of any final order or decision rendered by a state agency. There are two tests for judicial review of the evidentiary basis for the agency's decision. The "independent judgment" rule applies if the decision of an administrative agency will substantially affect a fundamental vested right. The trial court must not only examine the administrative record for errors of law, but also must exercise its independent judgment upon the evidence disclosed in a limited trial de novo. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242].) The "substantial evidence" rule applies when the administrative decision neither involves nor substantially affects a vested right. The trial court must then review the entire administrative record to determine whether the findings are supported by substantial evidence and whether the agency committed any errors of law, but need not look beyond the record of the administrative proceedings. (*Id*. at p. 144.) Which standard is to be utilized depends on whether the administrative action affects a fundamental vested right.

A fundamental "vested" right has been defined in terms of a contrast between a right possessed and one that is merely sought. (*Coldwell Banker & Co.* v. *Department of Insurance* (1980) 102 Cal.App.3d 381, 406 [162 Cal.Rptr. 487].)

"The term 'vested' denotes a right that is either 'already possessed' [citation] or 'legitimately acquired' [citation]. Business or professional licensing cases have distinguished between the denial of an application for a license (nonvested right) and the suspension or revocation of an existing license (vested right). [Citation]. Once an agency has exercised its expertise and issued a license, the agency's subsequent revocation of that license generally calls for an independent review of the facts, because the revocation or suspension affects a vested right. [Citations.]" (*Berlinghieri* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 392, 396 [188 Cal.Rptr. 891, 657 P.2d 383].)

In contrast, the denial of a license to a previously unlicensed person does not affect a vested right, and the substantial evidence test should be used. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33].)

Vehicle Code section 11803 allows an applicant for a vehicle salesperson's license to obtain a temporary permit "[p]ending the satisfaction of the department that the applicant has met the requirements under this chapter." The temporary permit is valid for 120 days while the DMV completes its investigation. However, the department may cancel the temporary permit if it determines the permit was issued in error or upon a fraudulent

application. In any event, the temporary permit becomes invalid when the department issues or refuses to issue the license.

In the instant case, Clerici received a temporary permit on June 1, 1988. On September 30, 1988, he was informed that his application for a salesperson's license was denied, and that the temporary permit was issued in error because of his prior conviction for possession for sale of controlled substances. The denial of the application did not involve a fundamental vested right because Clerici did not previously possess a license. The permit was "temporary" in nature, and the 120-day period had already expired.

Thus, the DMV's denial did not affect a fundamental vested right, and the scope of review on a petition for writ of mandate is limited to a determination of whether substantial evidence supports the agency's action. (*Davis v. California Coastal Zone Conservation Com.* (1976) 57 Cal.App.3d 700, 708-709 [129 Cal.Rptr. 417].) ■ The agency's decision is usually upheld unless it lacks substantial evidentiary support or infringes on the applicant's statutory or constitutional rights. (*Bixby v. Pierno, supra*, 4 Cal.3d at p. 146.) Where the agency's findings are devoid of evidentiary support or are based upon inferences arbitrarily drawn and without reasonable foundation, the administrative order will be reversed as not being supported by substantial evidence in light of the whole record. (*Lorimore v. State Personnel Board* (1965) 232 Cal.App.2d 183, 187 [42 Cal.Rptr. 640].)

Here, the trial court reviewed the entire administrative record and determined there was insufficient evidence to support the administrative law judge's decision that the license should be denied. This court's scope of review on appeal from such a judgment is identical to that of the trial court: it must look to the entire administrative record not only to determine whether the findings are supported by substantial evidence, but also to determine "whether the agency committed any errors of law." (*Bixby v. Pierno, supra*, 4 Cal.3d at p. 144; *Merrill v. Department of Motor Vehicles, supra*, 71 Cal.2d at pp. 916-917.)

## II. THE DMV IS ENTITLED TO DENY A LICENSE UNDER THE "MORAL TURPITUDE" STANDARD FOR VEHICLE SALESMEN

The DMV contends it was entitled to deny Clerici's application because of his prior conviction for a crime of moral turpitude. Clerici has claimed throughout this matter that the DMV lacks the authority to deny a license under the "moral turpitude" standard because such language does not appear in the vehicle salesperson licensing statute.

The occupational licensing provisions of division 5 of the Vehicle Code permit the DMV to deny, revoke or suspend occupational licenses for

vehicle verifiers (§ 11302), automobile dismantlers (§ 11503), lessors and retailers (§ 11604), manufacturers and dealers (§ 11703), vehicle salespersons (§ 11806), and vehicle representatives (§ 11902). The DMV may refuse to issue such licenses because of previous misconduct in the automobile business (§ 11604, subd. (2)), incorrect or incomplete information in the application (§ 11902, subd. (b)(1)), or for conviction of a felony or crime involving moral turpitude (§ 11703, subd. (d)).

Vehicle Code section 11800 requires an individual to obtain a vehicle salesperson's license from the DMV before he may act as a salesperson. An application must be submitted to the DMV, and a temporary permit may be issued while the DMV investigates the applicant. (§ 11803.) Section 11806 allows the DMV, after notice and hearing, to deny, suspend or revoke a vehicle salesperson's license on several grounds. Previous paragraph (5) expressly provided for the denial of the salesperson's license if the applicant " 'is not of good moral character. The conviction of a crime . . . involving moral turpitude shall be prima facie evidence that the applicant or licensee is not of good moral character.' " (See Historical Note, 66 West's Ann. Veh. Code (1987 ed.) § 11806, p. 218.)

■ Section 11806 was amended in 1975 to add paragraph (4), which provided for the denial of the license if "cause for refusal exists under Section 11703."[2] Section 11806 was again amended in 1977, numbered paragraphs were replaced by lettered subdivisions, and paragraph (4) was deleted. Paragraph (5) was replaced by subdivision (d). The amended (and current) version of section 11806, subdivision (d) provides for the denial, revocation or suspension of a salesperson's license if "cause for refusal, suspension, or revocation exists under the provisions of Sections 11302 to 11909, inclusive." As noted, these provisions deal with the DMV's power to deny, revoke, or suspend an occupational license for automobile lessors, dealers, manufacturers and other automobile-related businesses. Section 11703, subdivision (d) provides that the DMV may refuse to issue a license to a manufacturer or dealer if the applicant "has been convicted of a felony or a crime involving moral turpitude."

The DMV notified Clerici that his license was denied pursuant to section 11806, subdivision (d), because of his prior conviction and that the department was specifically relying on the "moral turpitude" restriction of section 11703, subdivision (d). Clerici argues the amended version of section 11806, subdivision (d) eliminated the "moral turpitude" standard and refers only to licensing schemes for other occupations which are irrelevant to vehicle

---

[2] Section 11703 states the grounds for denial of a license to automobile manufacturers and dealers.

salespersons. He argues the DMV cannot "bootstrap" itself to sections that are not explicitly in the Vehicle Code, and do not relate to salespersons.

An analysis of the legislative history of the amendments to section 11806 refutes this argument. Section 11806 was amended in 1977 pursuant to Assembly Bill No. 1066. The Legislative Counsel's Digest explains that previous section 11806 allowed the DMV to deny, revoke or suspend a vehicle salesperson's license "when it determines that, among other grounds, the applicant or licensee is not of good moral character, evidence of which may be established by conviction for a crime involving moral turpitude, or that any cause for refusal to issue a license to a vehicle dealer, transporter [or] manufacturer . . . exists with respect to the applicant or licensee, one such cause being conviction of a felony or a crime involving moral turpitude."

The digest explained the effect of the amendments: "This bill would recast such provisions, and instead would authorize the department to refuse to issue, suspend, or revoke such a license when it determines that a cause for refusal, suspension, or revocation exists under specified provisions of the Vehicle Code which prescribe grounds for refusal to issue, and for suspension or revocation of, a license of a vehicle verifier, automobile dismantler, vehicle lessor-retailer, *vehicle salesman*, vehicle representative, vehicle dealer, . . . manufacturer, . . . or distributor branch. Further, this bill would delete the specific provision which authorizes the department to refuse to issue, suspend, or revoke such a license when it determines that the applicant or licensee is not of good moral character, *but the department would still be authorized to refuse to issue, suspend, or revoke such a license when it determines that the applicant or licensee has been convicted of a felony or a crime involving moral turpitude.*" (See Legis. Counsel's Dig., Assem. Bill No. 1066, 3 Stats. 1977 (Reg. Sess.) Summary Dig., p. 157, italics added.)

A court must construe a statute so as to effectuate all of its provisions. (*Brandt* v. *Fox* (1979) 90 Cal.App.3d 737, 743 [153 Cal.Rptr. 683].) The legislative history indicates the purpose of the amendment to section 11806 was not to eliminate the "moral turpitude" standard, but rather expand the potential grounds for denial, suspension, or revocation of a vehicle salesperson's license through reference to the licensing requirements of related motor vehicle occupations. The amended version of section 11806, subdivision (d) still provides for the denial of a vehicle salesperson's license if the applicant has been convicted of a felony or crime involving moral turpitude. While the express language was deleted from subdivision (d), the "moral turpitude" restriction is incorporated by reference to the delineated licensing schemes for manufacturers, dealers, lessors, and other occupations.

Thus, the DMV was authorized to rely on section 11703, subdivision (d), which is incorporated by reference in section 11806, subdivision (d), to deny the license.

### III. CLERICI'S PRIOR CONVICTION IS A CRIME OF MORAL TURPITUDE

The DMV contends Clerici's prior conviction for possession of cocaine for sale was a crime of moral turpitude substantially related to the occupation of an automobile salesperson. The administrative law judge determined the license should be denied because of Clerici's prior conviction. The trial court reviewed the entire administrative record and determined there was insufficient evidence to support the administrative law judge's decision that the license should be denied. Upon appeal, this court's review of the administrative decision is identical to that of the trial court: it must look to the entire administrative record not only to determine whether the findings are supported by substantial evidence, but also to determine "whether the agency committed any errors of law." (*Bixby* v. *Pierno, supra*, 4 Cal.3d at p. 144; *Merrill* v. *Department of Motor Vehicles, supra*, 71 Cal.2d at pp. 916-917.) Whether a person has been convicted of a crime involving moral turpitude is a question of law. (*Otash* v. *Bureau of Private Investigators* (1964) 230 Cal.App.2d 568, 571 [41 Cal.Rptr. 263].)

Our Supreme Court has defined moral turpitude as "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442].) Moral turpitude has also been described as any crime or misconduct committed without excuse, or any "dishonest or immoral" act not necessarily a crime. (*In re Higbie* (1972) 6 Cal.3d 562, 569 [99 Cal.Rptr. 865, 493 P.2d 97].) The definition depends on the state of public morals and may vary according to the community or the times, as well as on the degree of public harm produced by the act in question. (*Golde* v. *Fox* (1979) 98 Cal.App.3d 167, 181 [159 Cal.Rptr. 864].) Its purpose as a legislated standard is not punishment but protection of the public. (*Rice* v. *Alcoholic Beverage etc. Appeals Bd.* (1979) 89 Cal.App.3d 30, 36 [152 Cal.Rptr. 285].)

Moral turpitude has also been defined in criminal cases involving the use of prior convictions for impeachment purposes. Crimes which reveal a defendant's dishonesty, general "readiness to do evil," bad character or moral depravity involve moral turpitude. (*People* v. *Castro* (1985) 38 Cal.3d 301, 315 [211 Cal.Rptr. 719, 696 P.2d 111]; *People* v. *Hunt* (1985) 169 Cal.App.3d 668, 674 [215 Cal.Rptr. 429].) " '[W]hen it is proved that a

witness has been convicted of crime, the only ground for disbelieving him which such proof affords is the *general readiness to do evil* which the conviction may be supposed to show. It is from the general disposition alone that the jury is asked to infer a readiness to lie in a particular case, and thence that he has lied in fact. The evidence has no tendency to prove that he was mistaken, but only that he has perjured himself, and it reaches that conclusion solely through the general proposition that he is of *bad character* and unworthy of credit.'" (*People* v. *Castro, supra*, 38 Cal.3d 301, 314, quoting *Gertz* v. *Fitchburg Railroad* (1884) 137 Mass. 77, 78, italics added.) █ While simple possession of narcotics does not necessarily involve moral turpitude, "possession for sale does pass the test. The trait involved is not dishonesty but rather the intent to corrupt others . . . . Anything that is related to trafficking is more serious than possessing." (*People* v. *Navarez* (1985) 169 Cal.App.3d 936, 949 [215 Cal.Rptr. 519].)

There are four cases which best illustrate the various definitions of moral turpitude in civil disciplinary proceedings, depending on the facts of the conviction and the nature of the occupation. In *Rice* v. *Alcoholic Beverage etc. Appeals Bd., supra*, 89 Cal.App.3d 30, a liquor license was revoked because of the licensee's conviction of possession of cocaine and marijuana for sale. The licensing scheme permitted revocation if the licensee violated any law "prohibiting conduct involving moral turpitude." (*Id.* at p. 33, fn. 1.) The court acknowledged the "amorphous" definition of moral turpitude, but that it is "inherent in crimes involving fraudulent intent, intentional dishonesty for purposes of personal gain or other corrupt purpose [citations], but not in other crimes which neither intrinsically reflect similar inimical factors nor demonstrate a level of ethical transgression so as to render the actor unfit or unsuitable to serve the interests of the public in the licensed activity." (89 Cal.App.3d at p. 37.) The licensee's convictions involved the specific intent to sell narcotics, and the "societal condemnation of such an inherently evil purpose is unmistakably manifested" in penal statutes punishing such conduct. (*Ibid.*) Possession of narcotics for sale reflects "such a degree of antisocial conduct and corrupt purpose as to fall within the contemporary definition of moral turpitude" as a matter of law within the meaning of the licensing statutes. (*Id.* at p. 38.)

In *Brandt* v. *Fox, supra*, 90 Cal.App.3d 737, 747, the real estate commission denied an application for a real estate salesman's license because of the applicant's conviction for distribution of cocaine. The applicant never had the cocaine in his possession, but merely arranged an introduction between individuals with some knowledge it would result in a narcotics sale. While the licensing statutes authorized the denial of a license for conviction of a felony or crime of moral turpitude, they also required the crime or act be substantially related to the qualifications, functions or duties of the business

or profession for which application is made. (*Id.* at pp. 742-743.) The court concluded the conduct was relatively remote in time (four years), involved one isolated incident, and the applicant was only peripherally involved in the illegal transaction. His conduct "did not involve fraud or dishonesty in any fundamental sense," or bear a substantial relationship to the qualifications, functions or duties to render him unfit to obtain a license. (*Id.* at p. 747.) The court concluded the commission's decision to deny the license was not supported by the evidence.

*Brewer* v. *Department of Motor Vehicles* (1979) 93 Cal.App.3d 358 [155 Cal.Rptr. 643] involved the revocation of a vehicle salesperson's license because the individual had been convicted of annoying or molesting a child (former Pen. Code, § 674a, current § 647.6), which the DMV considered to be a crime of moral turpitude.[3] The licensee argued there must be a nexus between the criminal conviction and the occupation in order to revoke the license pursuant to the moral turpitude standard.

The court noted the purpose of the moral turpitude standard in license regulatory statutes was not to punish but "to protect members of the public when they deal with respondent in his occupation of selling automobiles." (93 Cal.App.3d at p. 366.) The court agreed with respondent that there must be a nexus between the criminal conduct and the occupation in order to revoke such a license: "In our view before a criminal offender may be denied a license to engage in gainful work because of a standard requiring good moral character there must be a substantial or rational connection between the committed offense and the particular occupation." (93 Cal.App.3d at p. 365.)

A conviction cannot support a denial or revocation of a license unless the crime is " ' " " 'substantially related to the qualifications, functions or duties of the business or profession' in question [citation]." ' " " (93 Cal.App.3d at p. 367, quoting *Brandt* v. *Fox, supra,* 90 Cal.App.3d at p. 748.) While this requirement was developed for the real estate profession, the court determined the public policy regarding real estate licenses was the same for vehicle salespersons. (93 Cal.App.3d at p. 367.)

The primary goal of licensing automobile dealers is the protection of the public from unscrupulous and irresponsible persons. "We think the same is true as regards vehicle salespersons. Obviously, honesty and integrity are the primary traits of good moral character that must reasonably relate to the occupation of vehicle salespersons. In our view, a one-time sexual

---

[3] *Brewer* was decided under the original version of section 11806, subdivision (5), which expressly stated "moral turpitude" as grounds for denial, revocation or suspension of the salesman's license.

offender, as respondent evidently is, whose immorality consists of an abnormal sexual interest in children is not rendered thereby unfit to deal with the public and sell vehicles." (93 Cal.App.3d at p. 366.) The court rejected the DMV's argument that a child molestation conviction was "analogous to criminal convictions for violation of Health and Safety Code provisions proscribing sale and possession for sale of restricted dangerous drugs and narcotics, and therefore under the rationale of [*Rice*], moral turpitude per se." (*Ibid.*) There was no "apparent connection" between the child molestation conviction and the business of selling cars, and the license was improperly revoked.

Finally, in *Golde* v. *Fox, supra*, 98 Cal.App.3d 167, the Department of Real Estate revoked a broker's license because the individual had been convicted of possession of marijuana for sale, a crime involving moral turpitude. The broker flew a small airplane containing 1,000 pounds of marijuana from Mexico to California. He was apprehended before he could deliver the narcotics to another dealer. The court reviewed the various definitions of moral turpitude and concluded the conviction must be substantially related to the duties of a broker to justify the revocation: "Honesty and truthfulness are two qualities deemed by the Legislature to bear on one's fitness and qualification to be a real estate licensee. If appellant's offense reflects unfavorably on his honesty, it may be said to be substantially related to his qualifications. [Citations.] Illegal possession and transportation by airplane with the attendant sophisticated planning of a quarter of a million dollars worth of marijuana, admittedly for the purpose of personal gain, is clearly an illicit act of deceit and dishonesty in a fundamental sense." (98 Cal.App.3d at p. 176.)

A broker is a potential fiduciary and acts for others in a confidential capacity. While the conviction was unrelated to the technical qualifications of a broker, it was clearly related to the honesty and integrity of an occupation which requires public trust and confidence. The public is entitled to expect the licensee to have demonstrated "a degree of honesty and integrity in order to have obtained such a license." (98 Cal.App.3d at p. 178.) The appellate court concluded the department's factual findings of the nature of the conviction, the quantity of marijuana involved, and the motivations of the broker were supported by the evidence, and the crime was substantially related to the qualifications, functions, or duties of a real estate broker. (*Ibid.*)

In the instant case, the administrative law judge made a factual finding that the conviction for possession for sale of cocaine was "rationally related" to the duties, functions and qualifications of a vehicle salesman. Such an occupation requires good moral character, and the salesman "must be trust-

ed to conduct himself with honesty and integrity" toward the public. The decision cited Clerici's "significant involvement" in narcotics trafficking and recent conviction, and relied on the reasoning of *Golde* v. *Fox* to conclude the crime was rationally related to the qualifications of a vehicle salesperson. However, the superior court determined there was insufficient evidence to support these findings.

From the record before us, it is difficult to determine the area in which the superior court found the administrative decision deficient. Clerici raised two issues in the superior court: (1) the DMV could not rely on a crime of moral turpitude to deny the license because the Vehicle Code did not contain such language, and (2) the lack of nexus between the conviction and the duties of a vehicle salesperson. To the contrary, our prior analysis illustrates that the "moral turpitude" restriction was not eliminated from the licensing scheme. Thus, the trial court erred in this regard.

As for the nexus requirement, Clerici contends the facts are similar to *Brewer* in that his conviction is unrelated to the honesty and integrity required of a salesperson. Our analysis of the preceding cases leads to the conclusion that the circumstances surrounding Clerici's conviction of possession of cocaine for sale was one of moral turpitude substantially related to the duties of a vehicle salesperson. *Brewer* determined that a vehicle salesperson must possess honesty and integrity, and *Golde* found a nexus between such standards and a similar crime of possession for sale. Clerici's prior criminal conduct did not merely involve personal use of narcotics, or possession of a small amount for potential sale. Instead, he was in possession of a substantial amount of both methamphetamine and cocaine which he admittedly intended to sell. In addition, he also admitted possession of methamphetamine oil and the intention to manufacture controlled substances.

In contrast to *Brandt*, the crime was not an "isolated occasion relatively remote in time" to his application for a license. (*Brandt* v. *Fox, supra*, 90 Cal.App.3d at p. 747.) He was initially arrested in October 1986 for possession of 1,000 grams of methamphetamine, and acknowledged his intent to manufacture. He was again arrested in July 1987 after one-half ounce of cocaine was seized from his house. His application for a vehicle salesperson's license was made in June 1988. Clerici's involvement in narcotics trafficking, when compared to mitigating circumstances of his performance on probation, leads to the conclusion that his conduct is substantially related to the honesty and integrity required of a vehicle salesperson. The trial court erred in this regard as well.

Thus, the superior court's determination that the administrative decision was not supported by the evidence cannot stand. A review of the decision

refutes its conclusion. The DMV was authorized to deny a vehicle salesperson's license if the applicant had been convicted of a crime of moral turpitude substantially related to the functions and duties of the business. Clerici's prior conviction for possession for sale, and the factual circumstances of his arrest, are clearly related to the honesty and integrity required of a vehicle salesperson.

The judgment of the superior court is reversed. Appellant is awarded its costs of appeal.

Ardaiz, J., and Dibiaso, J., concurred.