[No. D036898. Fourth Dist., Div. One. Nov. 27, 2001.]

GARY PROVENZANO, Plaintiff and Appellant, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

### COUNSEL

Gary Provenzano, in pro. per., for Plaintiff and Appellant.

Bill Lockyer, Attorney General, Dennis W. Dawson and Kathryn M. Megli, Deputy Attorneys General, for Defendant and Respondent.

### OPINION

**HUFFMAN, Acting P. J.**—Gary Provenzano appeals a judgment denying his petition for a writ of mandamus and upholding the administrative law judge's (ALJ's) findings supporting the Department of Motor Vehicles' (DMV's) revocation of Provenzano's vehicle salesperson's license. Provenzano contends the ALJ lacked statutory authority to revoke his license, the statutes the ALJ relied upon do not constitute a basis for revocation because the alleged victim suffered no loss or damage, and the ALJ abused his discretion.

We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In June 1997, Provenzano, a licensed salesperson at L.J. Motorcar Company (Company), owned by his wife, sold a 1996 BMW Z3 convertible to Darang Tech for $27,586.75, including tax and license fees. At the time Company did not have title to the BMW. It was owned by another dealership and leased to Asdghig Keuylian. Apparently, Provenzano had traded the BMW for another car, but Keuylian was demanding additional money to pay off the lease. Tech's contract indicated Company was the owner of the car and Tech made two checks for its purchase to Company. Provenzano told

Tech he owned Company and the BMW, and was selling the car for personal reasons.

Tech did not receive registration documents for several months, so he contacted Provenzano, who told him the paperwork had been sent to DMV. After waiting additional time, Tech called Provenzano again. Provenzano said the title would be sent in two weeks. After that time passed, Tech again contacted Provenzano, who told him DMV had the paperwork and there was nothing he could do.

In November 1997, Tech registered a complaint with DMV and learned that another dealership had title and the car was leased. He continued to contact Provenzano, who told him he was working to obtain title and needed more time. Tech sent two certified letters to Provenzano, but they were not accepted. A year passed and during this time Tech was forced to obtain temporary registrations every 30 days.

Tech contacted an attorney who negotiated a settlement with the original lessee of the car, requiring Tech to pay $3,500 to obtain title. After Tech paid that amount and received title, Provenzano agreed to pay $3,500, but refused to pay Tech's attorney fees and other costs.

In August 1998, Tech filed a complaint against Provenzano and Company, and DMV filed an accusation against Provenzano, alleging he failed to disclose that Company did not have title to the BMW and would likely not be able to provide title. DMV claimed Provenzano's acts were causes for suspension or revocation of his vehicle salesperson's license under Vehicle Code[1] sections 11705, subdivision (a)(14), and 11806, subdivision (d).

After a hearing, the ALJ found that at the time Provenzano sold the BMW to Tech he knew Company did not have title, but advertised the BMW for sale, sold it, lied to Tech, and "strung him along" for more than a year. The ALJ stated Provenzano virtually forced Tech to hire an attorney and although he reimbursed Tech for his additional expense in obtaining title, refused to do anything else. The ALJ stated Provenzano's conduct was unconscionable and constituted fraud, justifying revoking his license. DMV adopted the ALJ's proposed decision as its own.

Provenzano petitioned the superior court for a writ of administrative mandamus, requesting the court overturn his license revocation. He argued

---

[1] All statutory references are to the Vehicle Code.

sections 11705, subdivision (a)(14), and 11806, subdivision (d), do not authorize suspending or revoking a vehicle salesperson's license and the evidence did not support the revocation.

After a hearing, the court denied the petition, finding review of the record did not show the ALJ's findings were not supported by the weight of the evidence or that Provenzano was denied a fair hearing. The court further ruled the code sections relied upon provided DMV with a basis for the revocation.

DISCUSSION

I

█ Provenzano contends sections 11705, subdivision (a)(14), and 11806, subdivision (d), do not provide authority to revoke his salesperson's license. He argues section 11705 by its terms applies only to manufacturers, transporters and dealers, not to salespersons, and it is placed within article 1 of chapter 4 of the code, which deals with manufacturers, transporters and dealers, not within article 2, which applies to vehicle salespersons. He claims the reference in section 11806, subdivision (d) to sections 11302 to 11909, inclusive, does not indicate that the acts proscribed within these sections apply to licensed salespersons.

█ A superior court exercises independent judgment upon the record of an administrative proceeding. On appeal, the reviewing court sustains the superior court's findings if they are supported by substantial evidence. (*Mann v. Department of Motor Vehicles* (1999) 76 Cal.App.4th 312, 321 [90 Cal.Rptr.2d 277].) The reviewing court also determines whether there are any errors of law. (*Clerici v. Department of Motor Vehicles* (1990) 224 Cal.App.3d 1016, 1024 [274 Cal.Rptr. 230] (*Clerici*).) █ Here, the superior court's findings are well supported and we find no error of law.

Section 11806 provides in relevant part: "The department, after notice and hearing, may refuse to issue, or may suspend or revoke, a vehicle salesperson's license when it makes any of the following findings and determinations: [¶] . . . [¶] (d) A cause for refusal, suspension, or revocation exists under any provision of Sections 11302 to 11909, inclusive."

Section 11705 is included within sections 11302 to 11909. It states DMV may suspend or revoke a license if the license holder: "[h]as caused any

person to suffer any loss or damage by reason of any fraud or deceit practiced on that person or fraudulent representations made to that person in the course of the licensed activity." (§ 11705, subd. (a)(14).)

Although section 11705 states it applies to "a dealer, transporter, manufacturer, manufacturer branch, remanufacturer, remanufacturer branch, distributor, or distributor branch," the reference in section 11806, subdivision (d), to the provisions of sections 11302 to 11909, inclusive, make it applicable to vehicle salesperson licenses.

The reasoning in *Clerici, supra,* 224 Cal.App.3d 1016 is instructive. There, DMV denied an application for a salesperson's license on the ground of the applicant's prior conviction, which it determined involved a crime of moral turpitude. (*Id.* at p. 1019.) The applicant lost his administrative appeal, but the superior court found insufficient evidence to support the DMV decision and ordered it to issue the license. (*Ibid.*) DMV appealed, and the appellate court held DMV was entitled to deny the license under the moral turpitude standard and reversed the superior court judgment. (*Id.* at pp. 1024-1027.)

The applicant in *Clerici, supra,* 224 Cal.App.3d 1016, had contended DMV lacked authority to deny his application because language providing authority to deny, suspend or revoke a license on the basis of a crime of moral turpitude does not appear in the vehicle salesperson licensing statute. The reviewing court disagreed, noting that section 11806 previously provided for denial, suspension or revocation on that ground, but in amending the statute, the Legislature deleted that provision and the section now provides for the denial, revocation or suspension of a salesperson's license if " '[a] cause for refusal, suspension or denial exists under any provision of Sections 11302 to 11909, inclusive.' " (*Clerici, supra,* 224 Cal.App.3d at p. 1025, quoting § 11806, subd. (d).) The court noted these provisions deal with DMV's authority over licenses for lessors, dealers, manufacturers and other automobile-related businesses, and section 11703, subdivision (d), provides DMV may refuse to issue a license to a manufacturer or dealer if the applicant has been convicted of a crime involving moral turpitude. (*Clerici, supra,* 224 Cal.App.3d at p. 1025.) The court rejected the argument that sections that do not explicitly refer to salespersons cannot apply to them, stating the legislative history of the amendments shows a purpose to expand, not to limit, the potential grounds for denying, suspending, or revoking a vehicle salesperson's license through reference to licensing requirements of related motor vehicle occupations. (*Id.* at p. 1026.)

*Clerici, supra,* 224 Cal.App.3d 1016 is directly applicable here. The fact that section 11806, subdivision (d), does not mention as a ground for denial, suspension or revocation of a salesperson's license causing loss or damage through fraud, deceit or fraudulent misrepresentation is not dispositive because the section refers to acts within sections 11302 to 11909, inclusive, as additional grounds, stating DMV may deny, suspend or revoke a vehicle salesperson's license when it finds "[a] cause for refusal, suspension, or revocation exists under any provision of Sections 11302 to 11909, inclusive." DMV was authorized to rely on section 11703, subdivision (d), to revoke Provenzano's license.

## II

Provenzano asserts section 11705, subdivision (a)(14), does not constitute a basis for revoking his license because Tech suffered no loss or damage, in that Provenzano reimbursed him for the $3,500 he spent to obtain title and is now paying his attorney fees in settlement of a lawsuit.

DMV maintains Provenzano is precluded from raising this argument because he did not raise it before the trial court or at the administrative hearing. Assuming the argument has been preserved, it is without merit. Several months after Tech bought the car, he still had not received title and was compelled to hire an attorney, who negotiated a $3,500 settlement. Although Provenzano paid the $3,500, he refused to reimburse Tech for attorney expenses or other costs, including those associated with temporary registration documents. Tech then sued him and Company. The fact that the lawsuit was settled and Provenzano is now making installment payments on Tech's attorney fees does not mean that Tech suffered no loss or damage. In addition to attorney fees, Tech made many telephone calls, sent letters, including two certified letters, and traveled to the DMV to obtain temporary registration. In addition, he experienced frustration and aggravation in spending more than a year to obtain title and having to sue Provenzano to obtain a settlement on the issue of his attorney fees. Tech's damages constitute a basis for revocation under section 11705, subdivision (a)(14).

## III

Provenzano finally contends the ALJ abused his discretion in revoking his license without weighing lesser available penalties. We find no abuse of discretion. Provenzano advertised and sold the car, representing that he was

the owner, without advising Tech he did not have title. He did not inform Tech of the demand for additional money to clear title and forced Tech to obtain temporary registrations for over a year and to hire an attorney. Provenzano has not shown the ALJ abused his discretion.

## DISPOSITION

The judgment is affirmed.

Nares, J., and McDonald, J., concurred.